189 So. 763

## GREEN v. STATE.

### 7 Div. 578.

Supreme Court of Alabama.

June. 8, 1939.

Beddow, Ray & Jones, of Birmingham, and Longshore & Williams, of Anniston, for appellant.

Thos. S. Lawson, Atty. Gen., for the State.

KNIGHT, Justice.

The appellant was indicted for the offense of murder in the first degree by a Grand Jury of Calhoun County, and upon his trial upon said indictment was convicted of murder in the first degree, and his punishment was fixed by the trial jury at imprisonment in the penitentiary of this state for the term of his natural life. Judgment and sentence accordingly.

Upon the trial, the defendant had the benefit of able and experienced attorneys, and these attorneys appear for him in this court, and have submitted a comprehensive brief in support of their contentions that the trial court committed a number of errors prejudicial to the defendant during the progress of the trial. The contentions made here, and insisted upon for reversal of the judgment, have been given that consideration that the importance of the case calls for, and not only that, but we have carefully read and considered the entire record to determine whether at any point in the proceedings any errors of a prejudicial nature were committed by the trial court, which were not argued by appellant's counsel. Code, § 3258.

It appears that the subject of the homicide was a policeman of the City of Anniston, and that the deceased met his death at the hands of the defendant in attempting to make an arrest. Upon his trial, when testifying in his own behalf, the defendant admitted he shot and killed the officer, but insisted that he acted throughout in an effort to save his own life, or to save himself from grievous bodily harm at the hands of the deceased. The killing occurred about sundown in the City of Anniston, when the deceased and a companion officer were attempting to arrest the defendant. The defendant, when called upon by the officers to stop, ran, and the officers separated and attempted to catch him. At the time of the shooting, the second officer was not present, having gone in a different direction attempting to cut the defendant off in his flight.

When reached by officer Cannon, and other parties, the deceased was lying on his back pierced by six bullets, each entering from the front. The defendant had then left the scene of the difficulty, but was soon found at a nearby house. He was also shot some four or five times. These shots were from the pistol of deceased, unless it be the shot that hit the defendant in the hand. As to who actually fired this shot, there is conflict in the evidence. The defendant testified that he was shot in the hand by officer Cannon, while he was running from the officers, but this was denied by Cannon.

The defendant testified that he did not shoot the deceased, until the latter had shot him down, and that he was on the ground when he shot and killed the officer. This testimony was in direct conflict with other testimony in the case.

There was testimony tending to show that three of the bullets fired into the body of the deceased struck him near the center line of the body near the "solar plexus" or diaphragm of the body where the ribs start. We quote here from the testimony of Flint Gray, the Coroner of Calhoun County:

" * * * about the center line of the body and about an inch below the solar plexus or the diaphragm of your body where your ribs start there was a hole. I probed that hole; it went down and to the right, to the left to the back of his body, and there was another hole about an inch to the right of the first hole and about an inch higher, and there was another one about an inch higher and about an inch to the right. These were in the front side of the body.

"Q. How many did you find up here? A. Three.

"Q. Where did they come out apparently? A. Turn around please. In the back at the belt line we found one hole about two inches to the left of the spine; one hole about even with the belt line; and one hole about even with the belt line and about two inches to the right of the spine. These were exits in the back.

"I examined each one of the wounds described and probed them. The three wounds in front of the body described as coming out in the back ranged down. All told there were six wounds in his body.

"I examined the ground about there and found blood on the ground. His body was lying in the blood. I found three blood spots where the body was lying. I examined the bloody places on the ground and found a bullet in the blood spot on the ground about the center of the body.

"Q. I will ask you to examine this bullet. Did you find it there? A. Yes, sir. Found it about where the center of the body was,

and about two inches in the ground. When I speak of blood clots I mean places where blood has formed on the ground and the bullet was found there where all that blood was. That is the bullet I found in the ground."

The evidence was without dispute that the officer had no warrant for the arrest of the defendant, but there was evidence tending to show that after the defendant ran these officers discovered that the defendant had a pistol and had pulled it from his pocket as he ran. This was some several minutes before the deceased came upon the defendant, and the defendant testified that he did have a pistol in his pocket, but denied that he pulled it until just before he shot deceased. The evidence leaves no room to doubt that defendant knew that Cannon and the deceased were policemen in the City of Anniston.

The testimony was such as to make a case for the jury upon the several degrees of criminal homicide included in the indictment.

The defendant does not insist that he was entitled to the general charge directing his acquittal, if the jury believed all the evidence, but his insistence in this respect is that, at most, he could only be convicted of manslaughter in the first degree.

Section 3263 of the Code provides: "An officer may also arrest any person, without warrant, on any day and at any time, for any public offense committed, or a breach of the peace threatened in his presence; or when a felony has been committed, though not in his presence, by the person arrested, or when a felony has been committed, and he has reasonable cause to believe that the person arrested committed it; or when he has reasonable cause to believe that the person arrested has committed a felony, although it may afterwards appear that a felony had not in fact been committed; or on a charge made, upon reasonable cause, that the person arrested has committed a felony."

Thus, it is clear that an officer may not arrest a person for a misdemeanor without a warrant, unless the offense was committed in the presence of the arresting officer.

Whether, in this case, the defendant had, in the presence of the arresting officers, committed, or was, at the time of the attempted arrest, committing an offense, was a disputed issue in the case.

The appellant insists that his arrest or attempted arrest by the police officers was unlawful, and therefore they were trespassers.

In the case of Sanders v. State, 181 Ala. 35, 61 So. 336, 339, it was said: "In the case of an unlawful arrest, or attempt to arrest, killing the person attempting it is, as a general rule, manslaughter only. A person seeking unlawfully to arrest another is a trespasser; and the trespass is a ground of provocation sufficient to reduce the homicide of such person in resistance of the arrest from murder to manslaughter, though it is not so reduced, unless the person sought to be arrested actually acted under the influence of hot blood induced by the provocation. And such an attempt unlawfully to arrest gives the person sought to be arrested a right to resist, even to the extent of killing his opponent, if such killing is necessary to save his own life, or to save himself from serious bodily harm; but the necessity must have been real or apparent. The amount of force which he may use in self-defense, however, is that only which is necessary to prevent the carrying out of the unlawful purpose. If excessive force is used in making resistance, the right of self-defense is eliminated; and killing, by means calculated to cause death, with knowledge that the intent was only to arrest, is murder; * * *."

And in the Sanders case, supra, it was further observed: " 'In all cases of the killing of an officer, or of an assistant, in resistance of an arrest, a material inquiry, in determining the degree of the homicide, is whether the party resisting had knowledge or notice of official character and of presence for the exercise of official authority. If there is not such knowledge or notice, the homicide cannot be more than manslaughter, unless the resistance was "in enormous disproportion to the threatened injury." ' "

In the case of Adams v. State, 175 Ala. 8, 57 So. 591, 592, it was observed: "The citizen may resist an attempt to arrest him which is simply illegal, to a limited extent, not involving any serious injury to the officer. He is not authorized to slay the officer, except in self-defense; that is, when the force used against him is felonious, as distinguished from forcible. It is better to submit to an unlawful arrest, though made with force, but not with such force as to endanger the life or limb, than to slay the officer."

■■ It is generally recognized that a citizen may rightfully resist any attempt to put an illegal restraint upon his liberty, nevertheless resistance in all such cases must not be in enormous disproportion to the wrong or injury threatened. He has no right to kill to prevent a mere trespass, which is not accompanied by imminent danger of great bodily harm or felony, and which does not produce in his mind the reasonable belief of such danger. Noles v. State, 26 Ala. 31, 62 Am.Dec. 711; Adams v. State, supra; Lewis v. State, 178 Ala. 26, 59 So. 577; Sanders v. State, supra.

■ Unquestionably it is the law, as invoked by the appellant, an officer has no legal right to shoot a fleeing misdemeanant.

We have examined with great care the oral charge of the court in this case, and, taken and treated as a whole, it is a fair exposition of the law as applicable to the facts of this case. The portions excepted to by the defendant, when read in the light of the whole charge, and as explained and modified, when his attention was called to the excepted to portions, present no error.

In this case the defendant took the witness stand and testified in his own behalf. Thereafter, the state called a number of witnesses who were asked the following question: "Do you know the defendant's general reputation in the community where he lives?" In each instance the defendant objected to the question "on the ground it called for irrelevant, illegal, incompetent, and immaterial testimony; on the further ground it called for testimony that was not in rebuttal." The court overruled each such objection, and the defendant reserved an exception.

The witnesses, after answering they knew the defendant's general reputation in the community, further testified it was bad.

It is not here argued that the questions were subject to the objections assigned, but is argued that the court committed error in that part of the oral charge in which the court said: "The State has introduced evidence which tends to show that the defendant has a general bad reputation. I want to try to explain to you just what place this testimony has in the trial of this case, gentlemen. When a man is on trial in a criminal case, he has a right, when he is proceeding with his case, to introduce evidence to show that he is a man of good character. If, however, he does not introduce that evidence then the state has no right to introduce evidence to show that he is a man of bad character. However, when a defendant testifies in his own behalf, the defendant, just like any other witness, puts in issue his character for truth and veracity, and only for truth and veracity; but the law says this, that the State, when the defendant testifies, the State then can introduce evidence of witnesses which would tend to show that the defendant is a man of bad reputation, and the State does not have to go any further than that."

But the court did not stop there, he continued to instruct the jury, immediately following the above excepted to part of the charge, as follows: "However, the jury cannot consider it in any other way except in weighing the testimony of the witness. So, that evidence is to be considered by you only in determining what truth or what verity or what weight you will give to the defendant's testimony in this case."

■ There was no error in this part of the court's oral charge. It correctly stated the law. Baugh v. State, 215 Ala. 619, 112 So. 157; Byers v. State, 105 Ala. 31, 116 So. 716; Sweatt v. State, 156 Ala. 85, 47 So. 194; Cox v. State, 162 Ala. 66, 50 So. 398; Fields v. State, 121 Ala. 16, 25 So. 726; Mitchell v. State, 94 Ala. 68, 10 So. 518; Dolan v. State, 81 Ala. 11, 1 So. 707; Ward v. State, 28 Ala. 53.

Refused charge 17, which instructed the jury that the law of Alabama does not authorize an officer of the law to shoot a person who is fleeing from arrest for the commission of a misdemeanor, was fully covered by the court's oral charge and given charge 13.

Refused charge A was the general charge, and with reference to its refusal the appellant in brief states that this charge was "no doubt properly refused." We are of the same opinion.

■ Refused charge G instructed the jury that if they believed the evidence they could not convict defendant of murder in the first degree; while refused charge H gave similar instruction as to murder in the second degree. The evidence in this case justified its submission to the jury, both as to murder in the first and second degree. Hence, the court properly refused each of said charges.

■ Refused charge A (numbered by us A–2 for identification) under the facts of this case was misleading and abstract, and as far as any principle of law attempted to

148

be asserted was covered by the court's oral charge.

■ Refused charge C was refused without error. Dorough v. G. M. Harrington & Son, 148 Ala. 305, 42 So. 557; Aetna Fire Ins. Co. v. Kennedy, 161 Ala. 600, 50 So. 73, 135 Am.St.Rep. 160; Central of Georgia R. Co. v. Bagley, 173 Ala. 611, 55 So. 894; McLaughlin v. Beyer, 181 Ala. 427, 61 So. 62.

Charge D, if otherwise correct, was fully covered by given charge B.

■ Charge D–2 (so numbered by us for identification) was bad, in that it remitted to the jury the determination of what constituted self-defense.

■ Charge S was palpably bad. One cannot resist arrest to the point of taking human life, unless it becomes necessary to slay the aggressor in order, not to prevent the arrest, but to save one's own life, or to escape grievous bodily harm.

The court committed no errors in the admission or exclusion of evidence.

We have carefully considered appellant's motion for a new trial, as based upon each of the grounds stated therein, and cannot affirm that the trial court committed reversible error in overruling the same. Cobb v. Malone & Collins, 92 Ala. 630, 9 So. 738.

We have considered all questions presented by the record wherein the rulings were adverse to the defendant, and have found no reversible errors. It follows that the judgment appealed from must be affirmed. It is so ordered.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.