170 So.2d 498

**Maurice BLANKINSHIP**

v.

**STATE.**

**5 Div. 636.**

Court of Appeals of Alabama.

Nov. 17, 1964.

Rehearing Denied Dec. 8, 1964.

Hooton & Hooton, Roanoke, and Pilcher & Bradley, Gadsden, for appellant.

Richmond M. Flowers, Atty. Gen., and John C. Tyson, III, Asst. Atty. Gen., for the State.

CATES, Judge.

Convicted of assault with intent to murder Charlie Will Thompson, the Sheriff of Randolph County, and sentenced to seven years, Blankinship appeals. The trial judge overruled a motion for new trial.

We learn from an affidavit for new trial, that on October 1, 1963, there was a robbery at the Roanoke Wholesale Grocery.

Patrolling a country road near the Big Springs community, Mr. Thompson, his chief deputy, and a Roanoke City policeman saw three men, one the appellant, walking along the roadside.

Disregarding Thompson's hailing them with a command to halt, the three clambered up a bank six or seven feet high and ran. The sheriff pursuing, got tangled in some barbed wire. Blankinship shot at him at from about fourteen yards away. Thompson escaped harm.

More shots and the chase went on. The forces of the law brought in the dog boys and hounds from Georgia. Close to the State line, the trackers cornered Blankinship in a pine thicket whence they marched him to the Alabama law officers.

Blankinship did not testify. His only witness was his stepfather. The latter related a conversation with Sheriff Thompson. The tenor was, "I don't know which one of the boys shot at me, but I believe it was the middle one." This tended to exclude the defendant.

The State recalled the sheriff who denied saying anything resembling the quoted statement.

Much cross-examination was devoted to show the officers had swooped upon the trio without disclosing their badges or authority. However, the Roanoke policeman and the deputy were in uniform: all three officers wore badges and gun belts.

I.

The first claim of error the appellant puts thus:

"* * * The solicitor referred to the Appellant as a 'hoodlum' more than once, as a 'trigger-happy hoodlum' after being admonished by the Court not to refer to the Appellant and his companions as 'hoodlums', as a 'night

marauder', and the Solicitor further said, ' * * * Are you going to leave him hanging over a barbed wire fence for anybody that wants to take pot shots at them, *regardless of their reputation'?*

"To each of the above mentioned remarks of the Solicitor, the Appellant made timely objections, which were sustained by the trial court. * * *"

Defense counsel took no exception to the solicitor's use of "marauder." Therefore, we consider only the references to hoodlums, a term used twice by the solicitor in argument. Also, the solicitor on three occasions—erroneously—protested, "I didn't call them hoodlums."

If any contumacy resided in this rhetorical reinforcement, we leave that to the trial judge and the other repositories of such matters. At all events, we are not willing to reverse because of the word "hoodlum."

"We might observe that the only definition of hoodlum available to us is 'young rowdy' or 'street ruffian' and these seem rather mild when applied to persons who engage in 'hoodlumism' to the extent of" *shooting in broad daylight at peace officers.* Paraphrased with italicized matter added from Baugus v. State, Fla., 141 So.2d 264, at 269.

Though perhaps less in need, sheriffs are as much entitled to the law's protection as other citizens.

## II.

Blankinship's motion for new trial was supported by an affidavit of a witness to the effect that the sheriff shot at Blankinship first. But see Green v. State, 238 Ala. 143, 189 So. 763.

This case comes to us not only after verdict but also after it has been considered by the trial judge and is under the formidable presumption laid down in Cobb v. Malone, 92 Ala. 630, 9 So. 738. It would be trite to quote what was there said so well.

## III.

That Mr. Thompson was allowed to testify that the defendant "shot at" him was not invasive of the jury's province. To analogize this with rejected statements such as "he raped me" it would have been needful for the testimony to have been, "He shot at me with intent to murder me," or such.

We have carefully considered the entire record under Code 1940, T. 15, § 389, and consider the judgment below is due to be

Affirmed.