PER CURIAM.
This cause consists of consolidated appeals from sentences of death entered upon pleas of guilty to murder in the first degree in three cases, in the Circuit Court of the Eleventh Judicial Circuit for Dade County. Our jurisdiction to review this case is based on Article V, Section 3(b)(1), Florida Constitution, and Section 921.141(4), Florida Statutes (1975).
These appeals arise out of a series of murders committed by appellant during a twelve-day period. On September 20, 1976, appellant and an accomplice formulated a plan to rob and kill Daniel Pridgen. The purported motive for the killing was the fact that Pridgen, a minister, was a homosexual and in appellant’s opinion a man of the cloth violated religious and moral precepts by engaging in homosexual activities. According to the plan, appellant’s accomplice was to induce Pridgen to engage in homosexual activities. When Pridgen was undressed and in bed, the accomplice was to cough two times as a sign for appellant to enter the home and kill Pridgen. Appellant entered the Pridgen home when the signal was given and, while the accomplice covered Pridgen’s face with a pillow and held him helpless, appellant stabbed the victim to death. Appellant and his accomplice stole certain items from .Pridgen’s home, attempted to wipe their fingerprints from surfaces about the house, and fled.
During the evening of September 23, 1976, appellant proceeded to the residence of Katrina Birk pursuant to a plan for robbery. Mr. Birk allegedly had previously acted as a “fence” for property stolen by appellant. Appellant carried a rope, a knife and a gun with him to the residence. By appellant’s admission, the gun was loaded. Having arrived in the area of the home, appellant concealed himself outside of the residence and kept the home under surveillance for some period of time. Appellant waited until he was relatively certain that the occupants of the home, Mrs. Birk and her three sisters-in-law, were together in one room. Once this occurred, appellant cut the screen on the Birks’ front door and entered the residence. Appellant disguised himself by tying a rag around a portion of his face. Appellant instructed the four occupants to lie on the floor. Two of the women complied with appellant’s demand, and appellant permitted one woman to seat herself in a chair. Mrs. Birk went into the kitchen and obtained a box containing money, which she offered to appellant. At this point, appellant cut the telephone cord and proceeded to tie up the four women. As appellant was completing this task, he observed Mrs. Birk inching her way into the kitchen. An argument ensued between the two, and appellant shot Mrs. Birk in the head and repeatedly stabbed her with his knife, causing her death. Appellant thereafter approached his bound victims, shooting each in the head and inflicting several stab wounds. Appellant then fled to his home, carrying the money box. After arriving at his home, appellant counted the stolen money and disposed of the knife and the money container. Each of the sisters-in-law survived the assault. However, one woman became blind in one eye, one suffers *661 breathing difficulties due to the knife wounds to her lungs, and one remains in a comatose, vegetable state.
On approximately September 27, 1976, appellant contacted his third victim, Frank Meli, by telephone in response to the latter’s newspaper advertisement for the sale of an automobile. After briefly conferring with Meli, appellant terminated the telephone conversation. The following morning, appellant again called the Meli residence and arranged to meet Meli at a particular intersection for a test drive of the vehicle. Following the test drive, appellant persuaded Meli to go to appellant’s home to obtain the money to conclude the sale. Upon Meli’s entry into appellant’s home, appellant brandished a knife and forcibly bound his victim to a bed. Two of appellant’s companions assisted appellant in guarding Meli to prevent an escape. Appellant succeeded in selling Meli’s automobile and then forced Meli to telephone his family and request a ransom.
On the morning of September 29, 1976, appellant paid his companions part of the proceeds from the sale of the automobile for their assistance in holding Meli captive. Appellant’s friends left the residence and appellant entered the bedroom where Meli had been tied spread-eagled to a bed. The testimony at this point is conflicting. Appellant stated in his subsequent written confession to police that Meli had untied one of the four straps securing him to a bed and a struggle ensued. It is uncontested, however, that appellant stabbed Meli eleven times. During the stabbing, appellant’s companion entered the bedroom and covered Meli’s face with a pillow to prevent others from hearing the victim’s screams. When appellant and his companion left the room a few minutes later, Meli was fatally wounded but still alive. Before leaving, appellant secured Meli’s bonds and gagged him. Appellant then proceeded to an intersection where he had arranged to meet Meli’s brother and obtain the ransom money. After loitering in the area for several minutes, appellant observed what he believed to be police officers on a stakeout. Reaching the conclusion that Meli’s brother had. contacted the police, appellant left the area and returned home. Appellant reentered the bedroom in which Meli was being held and found his hostage dead. Appellant then dug a shallow grave in his backyard and buried his victim’s body.
On October 1, 1976, an investigation into Frank Meli’s disappearance culminated in the arrest of appellant’s two companions at appellant’s home. After learning that he was being sought by law enforcement officers, appellant surrendered to police near his residence. Thereafter, appellant was taken to the homicide office at the Dade County Public Safety Department and was advised of his Miranda rights. Appellant responded affirmatively to detailed questions of police with respect to whether he wished to waive these rights. When asked if he desired the presence of an attorney before speaking with the police, appellant answered, “I don’t need one if I told the truth. I don’t need no attorney.” Appellant then gave police a twenty-three page sworn statement, detailing his participation in the kidnapping and murder of Frank Meli, upon which an indictment was subsequently issued.
While incarcerated pending trial for the Meli incident, appellant was charged with the murder of Katrina Birk. Appellant was again advised of his Miranda rights which he specifically waived. Appellant responded in the negative to inquiries as to whether he desired to consult with the attorney who had been appointed to represent him in the Meli case. Appellant then gave a detailed sworn statement concerning the Birk homicide. Thereafter, appellant confessed to the killing of Daniel Pridgen, after again being advised of and waiving his Miranda rights.
Appellant was charged with the first degree murder and robbery of Daniel Prid-gen; three counts of attempted first degree murder and one count of first degree murder, robbery, and breaking and entering a dwelling and unlawfully assaulting persons therein in connection with the Birk incident; one count of murder, kidnapping for *662 ransom, robbery and conspiracy to commit robbery as to Prank Meli. At arraignment, appellant entered pleas of not guilty to the charges. However, appellant thereafter withdrew these pleas and pleaded guilty to each offense. The court conducted an extensive voir dire examination of appellant with respect to the factual basis of each charge, in response to which appellant essentially reiterated the substance of his sworn confessions to police.
Appellant expressly waived his right to a jury during the sentencing phase of his trial under Section 921.141(1) and (2), Florida Statutes (1975), and specifically requested the Court to determine punishment without a jury.[1]
On December 15, 1976, the circuit judge entered a written sentence of death as to each of the three counts of murder in the first degree; sentences of life imprisonment with respect to three counts of robbery and one count of kidnapping for ransom, and of breaking and entering and unlawfully assaulting persons therein; thirty years imprisonment as to each of three counts of attempted murder in the first degree; and fifteen years imprisonment for conspiracy to commit robbery. The sentences in each case were to run consecutively. The judge’s order included his findings in support of each sentence as required by Section 921.141(3), Florida Statutes (1975). The findings with respect to the Daniel Pridgen case were:
1.The murder . . was especially heinous, atrocious and cruel. Section 921.141(5)(h), Florida Statutes. The victim in this case did not meet a swift or relatively painless death. The murder was accomplished by the defendant’s repeatedly stabbing the body of the victim while the victim was held defenseless on a bed with no ability to defend himself. During the administration of the knife wounds, the victim was alive and in a position to feel the pain of each wound.
2. The murder . . was committed while the defendant was engaged in another dangerous and violent felony, to-wit: robbery, Section 921.141(5)(d), Florida Statutes, and the capital felony was plainly committed for pecuniary gain, Section 921.141(5)(f), Florida Statutes. The evidence adduced at the sentencing hearing indicates that the defendant stole money and a firearm from the victim’s apartment. Moreover, the defendant, through counsel, has conceded the applicability of Sections 921.141(5)(d) and (f), Florida Statutes, to the instant case. Under . . . Provence v. State, 337 So.2d 783 (Fla.1976), this court has treated the aggravating circumstances of Sections 921.141(5)(d) and (f), Florida Statutes, as one factor in determining that the sentence of death is appropriate.
3. The murder . . was committed for the purpose of avoiding or preventing a lawful arrest and to hinder the enforcement of the laws of this State. Section 921.141(5)(e), Florida Statutes. The victim of the robbery was plainly stabbed to death to allow the defendant *663 to avoid detection and thereby prevent his arrest for these crimes.
4. A careful consideration of all matters presented to the court impels the conclusion that there are insufficient mitigating circumstances under Section 921.-141(6), Florida Statutes, to outweigh the aggravating circumstances set out above. As to the mitigating factors contemplated by law, the court makes the following findings:
a. While there was no evidence admitted of prior convictions of the defendant, he readily admitted that he had carried on a course of burglaries and had stolen property for a significant period of time, thus eliminating Section 921.141(6)(a), Florida Statutes, as a mitigating circumstance. The court finds, however, that even if the defendant were considered to have had no significant history of prior criminal activity, that the aggravating circumstances of this case would still clearly far outweigh this factor of mitigation.
b. The defendant was not suffering from the influence of extreme mental or emotional disturbance during the perpetration of the crimes outlined-above and the defendant’s capacity to appreciate the criminality of his conduct or to conform his conduct to requirements of law was not substantially impaired. Sections 921.141(6)(b) and (f), Florida Statutes.
c. The victim was not a participant in the defendant’s conduct and he plainly did not consent to being brutally stabbed to death. Section 921.-141(6)(c), Florida Statutes.
d. While the defendant had an accomplice in the perpetration of his criminal acts, the defendant’s participation was nevertheless of major consequence to the murder of the victim. In no way could it be said that the defendant’s participation was relatively minor or that he was acting under extreme duress or substantial domination of another person. Sections 921.141(6)(d) and (e), Florida Statutes.
e.The defendant’s age of twenty-six at the time of his criminal conduct cannot be considered a mitigating factor, especially when viewed in the context of the defendant’s acts in planning and perpetrating these crimes and in disposing of the proceeds. Section 921.141(6)(g), Florida Statutes.
In support of its sentence in connection with the Birk incident, the court made the following findings:
1. The murder . . . was especially heinous, atrocious and cruel. Section 921.141(5)(h), Florida Statutes. The sixty-four year old murder victim was stabbed numerous times and eventually shot in the head by the defendant. This activity took place after the defendant broke into the victim’s home and robbed her in the presence of her three elderly sisters-in-law.
2. The murder . . . was committed while the defendant was engaged in other dangerous and violent felonies, to-wit: burglary and robbery, Section 921.141(5)(d), Florida Statutes, and the capital felony was plainly committed for pecuniary gain, Section 921.141(5)(f), Florida Statutes. Moreover, the defendant, through counsel, has conceded the applicability of Section 921.141(5)(d) and (f), Florida Statutes, to the instant case. [The court again treated Section 921.-141(5)(d) and (f) as one aggravating circumstance.]
3. The murder . . was committed for the purpose of avoiding or preventing a lawful arrest and to hinder the enforcement of the laws of this State. Section 921.141(5)(e), Florida Statutes. Not only was the victim in this case stabbed and shot to death, but her three elderly sisters-in-law were also shot and stabbed in an effort by the defendant to eliminate all of the witnesses to his crimes. This was clearly for the purpose of avoiding detection and thereby preventing his arrest for these crimes.
4. During the defendant’s criminal activities he knowingly created a great risk of death to many persons by stabbing and *664 shooting the victim’s sisters-in-law. Section 921.141(5)(c), Florida Statutes. One of the living victims remains in an unconscious state and, based upon the neurological evaluation, is a “vegetable.” Another of the living victims was shot in the forehead and as a result has lost the sight of her right eye. The third living victim was shot in the back of the head and was stabbed to such an extent that she continues to have difficulty breathing as a result of lung damage.
5. A careful consideration of all matters presented to the court impels the conclusion that there are insufficient mitigating circumstances under Section 921.-141(6), Florida Statutes, to outweigh the aggravating circumstances set out above.
The court made the same findings in this case with respect to the mitigating circumstances under Section 921.141(6), Florida Statutes (1975), as were made in the Daniel Pridgen case.
As to the kidnapping and robbery and murder of Frank Meli, the court found that:
1. The murder . . . was especially heinous, atrocious, and cruel. Section 921.141(5)(h), Florida Statutes. The victim in this case, a twenty year old college student, did not meet a swift and relatively painless death. The murder was accomplished by the defendant’s repeatedly stabbing the body of the victim while the victim was tied spread-eagled on a bed with no ability to defend himself. In total the victim was stabbed eleven times. During the administration of the knife wounds, the victim was alive and in a position to feel the pain of each wound. .
2. The murder . . . was committed while the defendant was engaged in other dangerous and violent felonies, to-wit: kidnapping for ransom and robbery, Section 921.141(5)(d), Florida Statutes, and the capital felony was plainly committed for pecuniary gain, Section 921.141(5)(f), Florida Statutes. The evidence adduced at the sentencing hearing indicates that the defendant disposed of the proceeds of the crime by buying a motorcycle, paying off the co-defendants, and by entertaining himself at the dog track and at a bar. Moreover, the defendant, through counsel, has conceded the applicability of Sections 921.141(5)(d) and (f), Florida Statutes, to the instant case.
[The court again treated Section 921.-141(5)(d) and (f) as a single aggravating circumstance.]
3. The murder . . was committed for the purpose of avoiding or preventing a lawful arrest and to hinder the enforcement of the laws of this State. Section 921.141(5)(e), Florida Statutes. The victim of the robbery-kidnapping had an ample opportunity to view the defendant’s face and to observe the address to which he was taken, which was the defendant’s house. One of the obvious reasons for the defendant’s stabbing to death of the victim and then burying him in a crude four-foot grave was to avoid detection and thereby prevent his arrest for these crimes.
4. A careful consideration of all matters presented to the court impels the conclusion that there are insufficient mitigating circumstances under Section 921.-141(6), Florida Statutes, to outweigh the aggravating circumstances set out above.
The court made the same findings as to the mitigating circumstances under Section 921.141(6), Florida Statutes (1975), as were made in the other cases.
On his appeal of the judgments of guilty and sentences as to each of these three cases, the appellant raises two points for vacating the sentences of death:
(i) Whether the trial court erred in each of the above-styled causes in sentencing him to death by electrocution as provided by Section 921.141 and Section 775.082, Florida Statutes (1975); and
(ii) Whether imposition and carrying out of the sentence of death under Sections 921.141 and 775.082, Florida Statutes (1975), constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the Constitution of the *665 United States. We will consider appellant’s points on appeal in inverse order.
The assertion that imposition and carrying out of a sentence of death under Sections 775.082 and 921.141, Florida Statutes (1975), constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the Constitution of the United States has been rejected by the United States Supreme Court as well as this Court. Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); State v. Dixon, 283 So.2d 1 (Fla.1973). Accord, McCaskill v. State, 344 So.2d 1276 (Fla.1977); Barclay v. State, 343 So.2d 1266 (Fla.1977). Accordingly, we find this contention to be without merit.
Appellant Washington maintains that the trial court erred in several particulars in sentencing him to death in each of the cases. As to each case he submits that the court impermissibly found and considered certain aggravating circumstances whereas the court erred in failing to find and consider certain mitigating circumstances. As to each case appellant asserts that it was error to find that the homicide was especially heinous, atrocious or cruel. Section 921.-141(5)(h), Florida Statutes (1975). We disagree.
The victim Pridgen was stabbed repeatedly while appellant’s accomplice held him helpless and unable to defend himself. Pridgen received seven potentially fatal wounds, none of which would have caused instantaneous death. Dr. Fernandez testified that it would have taken minutes for the victim to die and Washington’s confession established that Pridgen was struggling, wiggling, and trying to cry out. His face was covered with a pillow to mute the cries of pain and anguish which attend such a ferocious stabbing attack. Halliwell v. State, 323 So.2d 557 (Fla.1975), is inapposite because the victim there was quickly dispatched while dismemberment of his body occurred after death.
The homicide of the victim Meli was similar, but even more heinous, atrocious and cruel due to the fact that he was held captive in excess of twenty-four hours while the victim of a kidnapping. The mental anguish experienced by a kidnapped victim awaiting eventual death has been noted in an earlier decision of this Court as it bears on the atrocity of the crime. Knight v. State, 338 So.2d 201 (Fla.1976). The murder was effected while Meli was tied spread-eagled on a bed with no ability to resist. Once again an accomplice covered the victim’s face with a pillow to stifle his outcry from receiving multiple stab wounds. That Meli was alive during the course of the attack is borne out by the testimony of Dr. Wright who related that although one of the wounds could have caused near instantaneous death, while each wound was delivered Meli had blood pressure capable of producing hemorrhage, indicating that life continued. More dramatic evidence of continued life during the assault is supplied by the appellant’s confession. Washington described that Meli’s face was covered with a pillow because he was hollering. Meli then discontinued hollering and began moaning. Meli then repeated the Lord’s Prayer three or four times.
Katrina Birk was the victim of a calculated robbery which resulted in her murder. She was stabbed repeatedly and was also shot in the head. The bullet did not penetrate her skull and the cause of death was four of the nine stab wounds, none of which was instantly fatal. She was murdered in her own home in the presence of her three sisters-in-law who were later shot in the head and stabbed. The atrocity of the episode cannot be gainsaid. Cf. Funchess v. State, 341 So.2d 762 (Fla.1977).
Appellant next urges that it was error to find that the capital felonies were committed for the purpose of avoiding or preventing a lawful arrest. Section 921.-141(5)(e), Florida Statutes (1975). With respect to the Meli episode, he states that it is illogical to assume that the homicide was committed in order to prevent a lawful arrest when appellant surrendered to the police and admitted to committing the crime. This position is untenable in view of *666 the fact that appellant buried the victim’s body in a shallow grave in his backyard. It is further belied by the fact that Washington surrendered to the authorities only after his two accomplices were arrested at appellant’s residence, and he learned that he was also sought by the police.
Appellant makes the same argument in connection with the killing of Katrina Birk. He asserts that had he wished to eliminate all witnesses in order to prevent arrest, it must be presumed he would have killed the three sisters-in-law as well as the victim. Appellant’s position is unacceptable. There is every indication from the evidence that he attempted to do just that. He essentially seeks to be rewarded for poor marksmanship.
In respect to the victim Pridgen, Washington maintains that his confession indicated that the sole reason for the homicide was because the victim was a homosexual. The prevention of a lawful arrest was merely the concurrent effect of the murder, rather than the motive. This contention is eroded by the fact that it is clear from the record that robbery was a concurrent motive for the crime. Furthermore, the participants, after the killing, wrote matters on the walls of the house in order to leave the impression that Pridgen was murdered by a homosexual lover. This action could only have been calculated to serve as a device to mislead police authorities and thereby avoid detection. Nonetheless, even if Section 921.141(5)(e) is not supported by the evidence in the case of the Pridgen homicide, two well-founded additional aggravating factors [Section 921.141(5)(d) and (h)] and no mitigating factors were present. Under such circumstances the death penalty is appropriate. Elledge v. State, 346 So.2d 998 (Fla.1977); State v. Dixon, supra.
Appellant additionally submits that Section 921.141(5)(e) should be taken in conjunction with the finding under subsection (d) [capital felony committed while defendant engaged in committing robbery and kidnapping] and subsection (f) [capital felony committed for pecuniary gain] of Section 921.141(5). He suggests that when the three subsections are read together it is apparent that under any kidnapping/homicide or robbery/homicide situation all these provisions would invariably be applicable. An analogy is sought to be drawn with Provence v. State, supra. Although it is true that in some instances the three analytical concepts could combine automatically in the described situations we cannot say as in Provence that circumstance (e) always occurs in a robbery/murder-kidnapping/murder situation. For example, a homicide can occur in connection with a robbery or kidnapping solely because the victim attempts to resist the crime which precipitates an altercation during which the victim is killed. In recognition of this we have heretofore affirmed death sentences in eases where the subsection (e) aggravating circumstance has been found in combination with a subsection (d) aggravating circumstance involving robbery as well as kidnapping. Meeks v. State, 339 So.2d 186 (Fla. 1976) (robbery); Knight v. State, supra (kidnapping).
We come now to Washington’s assault upon the trial judge’s sentences, alleging his failure to consider the presence of two mitigating circumstances specified by Section 921.141(6), Florida Statutes (1975), plus an additional circumstance which he maintains should have been considered in mitigation. He first assails the judge’s failure to find the lack of a significant history of prior criminal activity. Section 921.-141(6)(a), Florida Statutes (1975). However, it appears from the record, and was recognized by the trial judge, that appellant had carried on a course of burglaries and had stolen property for a significant period of time. In his confession in the Birk case appellant stated he had committed a series of burglaries throughout Dade County and sold the stolen merchandise to Katrina Birk and her husband. He reiterated in open court that he was selling “hot merchandise” to Katrina Birk. Appellant asserts that under the rule announced in Provence, supra, previous convictions are required to negative Section 921.141(6)(a). Washington misconstrues the holding of Provence. *667 That case construed Section 921.141(5)(b) which requires previous conviction of another capital felony involving the use or threat of violence. We held: “Clearly the language of that subsection excludes the possibility of considering mere arrests or accusations as factors in aggravation.” (Emphasis supplied) 337 So.2d at 786. Section 921.-141(6)(a) makes no reference to conviction and, hence, Provence has no application to the instant case.
Washington next asserts that his age (26 years) should have been considered as a mitigating factor. Section 921.-141(6)(g), Florida Statutes (1975). This argument is without merit. In Songer v. State, 322 So.2d 481 (Fla.1975), we upheld the death sentence of a twenty-three-year old, stating “[TJoday one is considered an adult responsible for one’s own conduct at the age of 18 years.” Id. at 484. See also Barclay v. State, supra (defendants 27 and 23 years of age, respectively); Sullivan v. State, 303 So.2d 632 (Fla.1974) (defendant 25 years of age).
Appellant argues finally that the trial judge erred in not considering in mitigation the fact that the defendant voluntarily surrendered to the authorities, confessed and ultimately pleaded guilty to all charges. While we do not foreclose consideration of such factors in mitigation in an appropriate case, we do not believe the appellant’s actions are compelling here. First, it is clear that he did not surrender until he was aware that his accomplices had been apprehended at his residence and that he was also sought by the police. Furthermore, the considerations which make up the decision of a defendant to plead guilty, in the absence of a negotiated plea, are too ambiguous to assign significant weight to that act. Had Washington’s accomplices not been apprehended and had he not become the focus of suspicion, we can only speculate as to what his conduct would have been regarding his accepting responsibility for the crimes. Such speculation is too slender a reed upon which to rest a reversal of the death sentences in these cases in light of the array of aggravating circumstances present.
After a careful review of the record, we are satisfied that the pleas of guilty to murder in the first degree, attempted murder in the first degree, kidnapping for ransom, breaking and entering a dwelling and unlawfully assaulting persons therein, robbery and conspiracy to commit robbery were freely and voluntarily entered into and supported by a factual basis in the record. We conclude that death is the appropriate penalty on each judgment of guilty of murder in the first degree, and that the sentences imposed as to other counts are also in accordance with law. Accordingly, the judgments of guilty and sentences in the cases consolidated herein, including the sentences of death, are affirmed.
It is so ordered.
ADKINS, BOYD, OVERTON and SUNDBERG, JJ„ concur.
ENGLAND, C. J., concurs with an opinion.
HATCHETT, J., concurs in result only.

. The record states in pertinent part:
“THE COURT: You also have a right under our law to have a jury impaneled for the purpose of determining or making a recommendation to the Court as to what penalty would be involved in this case. They would be impaneled. They would hear testimony that would relate to the aggravating circumstances of the crimes involved. They would hear evidence as relates to any mitigating circumstances, your background, and whatever other things might be covered by an enumerated list.
“Do you understand that?
“THE DEFENDANT: Yes. I do.
“THE COURT: [Your attorney] has discussed that with you, has he not?
“THE DEFENDANT: Yes. He has.
“THE COURT: By saying, ‘Judge, I don’t want a jury to make a recommendation. I want you to hear it,’ you are giving up the right you have to have a jury do that.
“Do you understand that?
“THE DEFENDANT: Yes. I do.
“THE COURT: It is your desire to have me and me alone to determine your fate. Is that what you are saying?
“THE DEFENDANT: Yes. I do. I understand that.
“THE COURT: Has [your attorney] . . .
or anybody involved in these conversations given you any indication as to what results I would arrive at in this case.
“THE DEFENDANT: No. I haven’t.”