399 So.2d 859 (1979)
Anthony O'Hara JOHNSON
v.
STATE.
6 Div. 915.
Court of Criminal Appeals of Alabama.
May 22, 1979.
Rehearing Denied June 26, 1979.
*861 Robert W. Gwin, Jr., Birmingham, for appellant.
Charles A. Graddick, Atty. Gen., Mary Jane LeCroy, Asst. Atty. Gen., for the State, appellee.
BOWEN, Judge.
The defendant was indicted and convicted under the Alabama Death Penalty Act for robbery when the victim is intentionally killed. Alabama Code Section 13-11-2(a)(2) (1975). Punishment was fixed at death by electrocution. Both at trial and on appeal the defendant is represented by court appointed counsel.
In sentencing the defendant the trial judge made written findings of fact from the trial. Those findings are correct and accurately state the evidence introduced against the defendant. There was no defense presented. The trial judge found:

*862 "The indictment in this case charges the defendant, Anthony O'Hara Johnson, with having committed a robbery wherein William Albert Farmer was the victim, and with having intentionally killed William Albert Farmer in the course of this robbery. The evidence taken on the trial of this case showed that the defendant, who was twenty years old at the time of the robbery, and a companion, who was twenty-four years old at the time of the robbery, had robbed William Albert Farmer on March 30, 1978, in downtown Birmingham and killed him.
"William Albert Farmer owned and operated a jewelry store located at 1902 First Avenue, North, Birmingham, Jefferson County, Alabama, and it was at this location that the robbery took place.
"Just before the robbery, the defendant and his companion went into the store next door where a record player and stereo were being played and asked the clerk to turn the music up. This request was made by the defendant.
"Very shortly thereafter, the defendant and his companion proceeded into the Farmer Jewelry Store and robbed and killed Mr. Farmer, and ransacked the jewelry store of watches, rings and other items of jewelry.
"The companion proceeded out on the sidewalk and offered the occupant of an automobile, which was parked at the curb, ten dollars to drive him and his friend away from that location, and the occupants of the automobile refused and left.
"There was a witness there on the sidewalk, who was talking to the occupants of the automobile, who heard and reported the conversation. She saw the defendant then come out of the store and proceed behind his companion who had walked around the corner and was boarding a bus. The defendant also boarded the bus which proceeded north on 19th Street.
"The witness on the sidewalk summoned a policeman who appeared nearby on a three-wheel motorcycle, who came to the scene and put out a police call which resulted in the bus being stopped and the defendant removed from the bus. The proceeds of the robbery were found nearby, on the bus, and they, as well as the gun, were removed by the police.
"There was a witness seated on the bus who identified the defendant as the man who sat in a particular seat with the two bags of loot under his arm and who reported the conversation between the defendant and his companion wherein the companion suggested that the defendant put his arm over the bags so that no one could see what they had. One of the bags had one or more holes in it. This witness further reported that the companion had a billfold and was counting money in the billfold, and was instructed by the defendant not to be counting the money until they got where they were going.
"A billfold with the victim's identification, as well as driver's license, were found in the two bags of loot. When the police stopped the bus some six blocks north of the scene of the robbery, the defendant and his companion jumped up and ran to a seat in the back of the bus, leaving the bags of loot unattended where the defendant had originally kept them.
"When the police boarded the bus, asking questions generally as to who had the bags of loot, no one would reply, but from the direction of the eyes of the people seated nearby, as well as the fact that the defendant was perspiring heavily, the officer was led to arrest the defendant. His companion was not apprehended.
"The scene of the robbery was properly secured by the police and was turned over to the evidence technicians who made pictures and lifted a number of fingerprints from within the jewelry store, which were found to be the fingerprints of the defendant.
"The body of William Albert Farmer was laying on the floor. He was lying on his stomach and on the right side of his face. His right arm was doubled back under his head as if he was using it for a pillow. *863 His left arm was in a raised position, joining the right hand with the hand and fingers of the left hand lying over the right hand. His hands were placed in such a manner as to appear as if he had been using his right hand as a partial pillow. There was a twenty-two caliber bullet wound in the center of the back of his neck at the base of the brain.
"An autopsy was performed and fragments of the bullet were removed and were examined by the toxicologist, but were not sufficient on which to base a ballistics comparison with the gun found in the bag with the loot, which had been in the possession of the defendant."

I
Initially, the defendant maintains that from the record it cannot be determined whether he was tried in accordance with Alabama Code Section 13-11-8 (1975). That statute dictates the requirements for appointed counsel in death cases and reads as follows:
"Each person indicted for an offense punishable under the provision of this chapter who is not able to afford legal counsel must be provided with court appointed counsel having no less than five years' prior experience in the active practice of criminal law."
Nowhere in the record or in the defendant's brief on appeal is it alleged that his counsel was not qualified. The defendant simply contends that the record does not prove or show he was qualified, and that absent such proof his conviction cannot stand. We disagree.
The record discloses that the trial judge determined that the appointed counsel, Hon. Robert W. Gwin, Jr., was qualified to represent the defendant.
"THE COURT: ... He (Gwin) complies, both in experience and ability, as well as legally and technically with the requirements for such a representation.

"So, I am going to ask Mr. Gwin to accept that appointment.
"I have discussed it with you. Squire, and I understand that you are willing to take this appointment, is that correct?
"MR. GWIN: Yes, sir.
"THE COURT: So, the Court does, at this point, rule the defendant to be indigent, under the circumstances, and appoints
Mr. Gwin." (Emphasis added).
The language of the statute does not require the record to show that appointed counsel has at least five years' prior experience in the active practice of criminal law; it simply requires that the indigent accused be provided such counsel. Alabama Code Section 13-11-8 (1975). That the defendant in this matter was, in fact, provided with counsel meeting the statutory requirements is not questioned. Absent some tangible indication that the requirements of the statute were not met this Court cannot summarily rule, as a matter of law, that the statute was not complied with. Though not controlling, we deem it significant that appellate counsel was the defendant's appointed trial counsel.
This Court remanded the case of Jacobs v. State, 371 So.2d 429, Ala.Cr.App., (1977) for an evidentiary hearing to determine whether appointed counsel met the statutory requirements for appointed counsel in a death case. There appointed counsel testified on motion for new trial that he was not qualified. Those facts and that issue are not presented in this case.

II
The defendant next alleges the trial court erred to reversal by admitting at the sentencing hearing, over objection, the grand jury testimony of Sergeant Howard Felts and Marie Merrill, the victim of a prior robbery committed by the defendant. The defendant further objected to certain portions of Sergeant Felts' testimony at the hearing concerning what Mrs. Merrill had told him about the facts of the prior robbery. The defendant submits that both the grand jury testimony and Sergeant Felts' testimony relative to what Mrs. Merrill said concerning the past offense are violative of the hearsay rule. He further contends that the State did not show Mrs. Merrill's unavailability *864 to appear at the hearing as a witness and maintains that his opportunity for cross examination was thwarted.
Basically, the evidence elicited at the sentencing hearing revealed that the prior robbery had been conducted in a similar manner to the present offense. The defendant, along with two others, entered the Spidel Gem Company, a jewelry store in downtown Birmingham, at 1:15 P.M. on October 23, 1973, and robbed Mrs. Merrill of assorted costume jewelry and rings. During the course of that robbery the defendant shot Mrs. Merrill in the head; however, she survived the wound. Sergeant Felts stated that Mrs. Merrill later "looked at him (defendant) and stated that he was the one that had had the gun and the one that did the shooting".
Alabama Code Section 13-11-3 (1975) defines what evidence is admissible at the sentencing hearing to aid the court in determining whether to sentence the defendant to death or to life imprisonment without parole. In pertinent part it reads:
"In the hearing, evidence may be presented as to any matter that the court deems relevant to sentence and shall include any matters relating to any of the aggravating or mitigating circumstances enumerated in sections 13-11-6 and 13-11-7. Any such evidence which the court deems to have probative value may be received, regardless of its admissibility under the exclusionary rules of evidence, provided the defendant is accorded a fair opportunity to rebut any hearsay statements; provided further, that this section shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or the State of Alabama."
(Emphasis added).
The evidence in question was not secured in violation of the United States or Alabama Constitution. The evidence was not illegal and the defendant's constitutional rights were at all times protected. That the defendant had been involved in a prior robbery where great violence had been perpetrated against the victim in an almost identical fashion is certainly of probative value and a relevant factor for the trial court to consider at the sentencing hearing. According to Section 13-11-3 the trial court need not be concerned with whether this evidence would be admissible under the exclusionary rules of evidence. If the evidence has probative value it may be received, "provided the defendant is accorded a fair opportunity to rebut any hearsay statements". Alabama Code Section 13-11-3 (1975).
The question this court must resolve is whether the defendant was given a fair opportunity to rebut the hearsay statements. Sergeant Felts' testimony concerning what Mrs. Merrill said in his presence was hearsay evidence. Mrs. Merrill was not called by the State. The reason given by the district attorney for her absence was that he had called her and "(s)he stated to me that she was afraid to come in and testify because offor several things which have occurred as a result of this incident.... She appeared to be quite upset and nervous about it, and I just thought that it would be best thatfrom what attitude she took and how upset she was, I did not pursue her attendance further."
The record indicates that the defendant was given sufficient opportunity to rebut any hearsay statements made at the sentencing hearing. On two occasions during the hearing the trial court, in response to the defendant's objections, offered to have an instanter subpoena served on Mrs. Merrill compelling her appearance, thus providing the defendant with the opportunity to cross examine Mrs. Merrill and in that manner to rebut any statement attributed to her. On both occasions the defendant declined the trial court's offer. Defense counsel specifically stated that he had talked to Mrs. Merrill and did not have any intention of calling her as a witness in the sentencing hearing.
The trial court was not obligated to do more than provide a fair opportunity for rebuttal. It more than adequately complied with the statute. In addition, the defendant could have called other witnesses to *865 rebut the hearsay or could have thoroughly cross examined Sergeant Felts himself concerning the hearsay. Neither of those routes was pursued.
Thus, we conclude that the trial court did not err in admitting the grand jury testimony and Sergeant Felts' testimony concerning the prior robbery committed by the defendant. This information was relevant for the trial judge to consider in deciding what sentence to impose and the defendant was accorded a fair opportunity to rebut any hearsay statements.

III
The defendant alleges there was a fatal variance between the indictment and verdict. This allegation has no merit. The indictment, omitting its formal parts, is set out below:
"ANTHONY O'HARA JOHNSON, Alias ANTHONY O'HARRY JOHNSON, Alias ANTHONY O'HENRY JOHNSON, whose name is to the Grand Jury otherwise unknown, feloniously took one man's wallet of the value of FIVE DOLLARS, one ladies diamond ring of the value of ONE HUNDRED EIGHTY-FIVE DOLLARS, one ladies wedding ring set of the value of TWO HUNDRED DOLLARS, one man's diamond ring of the value of ONE HUNDRED NINETY DOLLARS, one ladies birthstone ring of the value of FORTY-FIVE DOLLARS, and one man's ring of the value of ONE HUNDRED THIRTY-FIVE DOLLARS, the personal property of William Albert Farmer, from his person and against his will, by violence to his person or by putting him in such fear as unwillingly to part with the same, and the said defendant in the course of the aforesaid robbery, did intentionally kill William Albert Farmer by shooting him with a pistol, and that said offense took place subsequent to March 7, 1976, ..."
This indictment was read in its entirety by the court to the jury during the court's oral charge. After deliberations the jury returned a verdict which read: "We, the jury, find the defendant guilty as charged in the indictment and fix his punishment at death." Thus, there was no variance between the indictment and verdict. Lindsay v. State, 29 Ala.App. 25, 191 So. 474, cert. denied, 238 Ala. 374, 191 So. 475 (1939); Smith v. State, 35 Ala.App. 580, 50 So.2d 791 (1951). The jury, by bringing back the general verdict of guilty, in full compliance with the trial judge's instructions, convicted the defendant of the very crime charged in the indictment. Ex parte Clements v. State, 370 So.2d 723, (Ala.1979).

IV
It is also maintained that the following portion of the trial court's oral charge erroneously informed the jury that the defendant was charged with murder:
"Now, this defendant, Anthony O'Hara Johnson, is charged with murder under what is referred to as the Alabama Death Penalty Statute, which became effective March 7, 1976."
Although the trial court's instructions were not objected to, this Court is obligated to review the entire proceedings, including the court's oral charge, for plain error. The new plain error rule, Rule 45A, ARAP, provides:
"In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant. (Adopted 10-2-78, eff. 12-1-78.)"
In deciding whether the defendant's substantial rights have been adversely affected we must look to the entire context of the court's oral charge to determine whether plain error exists which would merit reversal. When reviewing the propriety of a trial court's jury charge, this Court must consider the charge as a whole, in its totality, without isolating statements, which individually may appear prejudicial, from the *866 context in which they were made. Gosa v. State, 273 Ala. 346, 139 So.2d 321 (1962); Johnson v. State, 81 Ala. 54, 1 So. 573 (1886); Van Antwerp v. State, 358 so.2d 782 (Ala.Cr.App.), cert. denied, Ex parte Van Antwerp, 358 So.2d 791 (Ala.1978).
After reading the indictment and explaining to the jury its duty of fixing the defendant's punishment at death if it believed him guilty, the trial court read that portion of its oral charge which is now alleged to be error. Immediately after that portion, however, the court continued:
"Under this statute, there are several different categories which call for the death penalty if the jury verdict is guilty.
"The category of the offense for which the defendant is being tried is this: That where the defendant, while in the course of committing a robbery intentionally kills the victim of the robbery, that is, the person who is being robbed, then there is but one punishment upon a finding of guilty, and that is death in the electric chair.
"The elements in this case that you must find from the evidence, beyond a reasonable doubt, in order to convict this defendant of this offense and fix his punishment at death are these: that he did commit a robbery against William Albert Farmer, and, while in the course of committing that crime of robbery, he did intentionally kill William Albert Farmer. If you believe that beyond a reasonable doubt from the evidence and so find, then you should find the defendant guilty of the charge in the indictment and fix his punishment at death."
The court then explained the law concerning co-conspirators and the elements of robbery to the jury, after which the court further charged:
"In order for the jury to find the defendant guilty, you must find from the evidence, beyond a reasonable doubt and to a moral certainty that the defendant committed the robbery as charged in the indictment, and that in the course of such robbery he intentionally killed William Albert Farmer, not accidentally and not inadvertently, but intentionally.
"It is not sufficient if the death occurred incidentally in the commission, or the attempt to commit a robbery. The defendant must have committed the act of killing intentionally and willfully, and that means governed by the will and that he intended to kill William Albert Farmer and that he did kill him.
"To determine the intent, you are to take into consideration all of the evidence of all of the surrounding facts and circumstances in determining whether the necessary intent was present, and this is true as to any element of this offense where intent is a necessary ingredient.
"Now, if you are not convinced from the evidence beyond a reasonable doubt and to a moral certainty that the defendant robbed William Albert Farmer and that in such robbery he intentionally killed him, then you must find the defendant not guilty.
"The absence of your being convinced from the evidence beyond a reasonable doubt and to a moral certainty as to either of these elements of the offense would necessitate finding the defendant not guilty.
"On the other hand, if, after a full and fair consideration of all the evidence in the case, you are convinced from that evidence beyond a reasonable doubt and to a moral certainty that the defendant intentionally killed William Albert Farmer while he was robbing him, then it would be your duty to return a verdict finding the defendant guilty as charged in the indictment, and, in that event, it would be your further duty to fix his punishment at death."
Thus, when the court's oral charge is considered as a whole, it is clear the jury was properly instructed that the defendant was charged with a robbery where the victim was intentionally killed, as charged in the indictment. The court's instructions were neither erroneous nor confusing. The use of the word "murder" in the instructions when viewed in the light of the entire charge could not have prevented the jury *867 from understanding the crime with which the defendant was charged. Any error in its use was at most harmless. Rule 45, ARAP. None of the language condemned in Clements, supra, or Jacobs, supra, is present in the instant case. In summary, the court's oral charge comported with the indictment and was proper.

V.
Two sentencing hearings were conducted in this cause, the first on August 25, 1978, and the second on November 21, 1978. At the August sentencing hearing the trial court originally determined that one of the aggravating circumstances for this particular robbery when the victim was intentionally killed was that the capital felony was committed for pecuniary gain under Alabama Code Section 13-11-6(6) (1975). However, upon review of the Alabama Supreme Court's decision in Ex parte Cook v. State, 369 So.2d 1251, (Ala.1978), the sentencing judge, in order to prevent error, withdrew that aggravating circumstance from his consideration in imposing the death sentence. The Supreme Court in Cook, supra, held that the aggravating circumstance of "a capital felony committed for pecuniary gain" was not to be applied to robbery, but was meant to "cover a variety of crimes committed with the hope of financial benefit, ranging from `murder-for-hire' to an heir killing his benefactor to gain his inheritance". Thus, the August 25th judgment and sentence were set aside, and the aggravating circumstance enumerated in Section 13-11-6(6) specifically removed from consideration.
At the November hearing the proceedings were reopened for further evidence and additional evidence was presented by the defendant. The sentencing judge considered this in addition to the evidence previously introduced at the August hearing. No further evidence was presented by the State. With the exclusion of the aggravating circumstance above stated, the sentencing judge adopted its original findings from the sentencing hearing.
"On the hearing held this date, to aid the Court in determining whether to sentence the defendant to death or to life imprisonment without parole, the Court finds from the evidence that the defendant was twenty years old at the time of the commission of this offense and that his companion was twenty-four years old.
"The Court finds that on the 23rd day of October, 1974, when this defendant was sixteen years old, the defendant and one or more black males, robbed the Spidel Gems Company, which was located at 119 Twentieth Street, North, Birmingham, Jefferson County, Alabama, approximately one block from where the Farmer Jewelry Company is located.
"The Court has examined the sworn testimony of witnesses before the grand jury in that case and finds that during this robbery, the defendant told the young, female clerk that `this is a stick-up', and that when she turned to go to the back of the store he shot her in the head, but that the bullet did not break the skull.
"Sergeant Felts who investigated that robbery testified that the bullet went under the skin and proceeded about one inch, and then exited without doing any serious damage.
"On August 22, 1974, the defendant pleaded guilty to the robbery and assault with intent to murder for the Spidel Gem Company robbery and shooting, and was sentenced to serve a term of imprisonment in the penitentiary for ten years in the robbery case, for two years in the assault with intent to murder case, and at this same time pleaded guilty to a burglary charge and was sentenced to a term of two years imprisonment in the penitentiary.
"Probation was denied and he served in the penitentiary on these charges until August 8, 1977, which was approximately eight months before the robbery of the Farmer Jewelry Store at which time he was paroled, and was on parole when the present offense was committed.
"His fingerprints were also found at the scene of the Spidel Gem Company robbery.

*868 "The defendant offered testimony from the defendant's mother and grandmother, which indicates that the defendant was a product of a broken home and was shuttled back and forth between his mother and father until he was somewhere between the ages of nine and fourteen years, and that he was confined in a detention home for some reason which apparently stemmed from a fight which he had been in.
"At this present hearing, the defendant was present and was represented by an attorney, Honorable Robert W. Gwin, Jr., and the Court heard evidence offered by both the State and the defendant's attorney, as well as arguments of the State and arguments of the defense counsel.
"The Court finds the following aggregating circumstances to be present in this case:
"1. This offense was committed by the defendant while he was on parole from a sentence of imprisonment for a crime of violence which was committed in a manner similar to the offense in the present case.
"2. The present capital felony was committed while the defendant was engaged in and accompanied by another person in the commission of the robbery.
"3. This capital felony was committed for the purpose of avoiding or preventing a lawful arrest for the purposes of getting rid of the victim so that he could not identify the defendant.
"4. This capital felony was committed for pecuniary gain. (This the trial court `ruled out and repudiated' on August 25, 1978.)
"5. This capital felony was especially heinous and atrocious and appears to be an outright execution. The mitigating circumstances are as follows:
"a. The defendant was twenty years old and his alleged companion was twenty-four years old at the time of the commission of this capital felony. However, the Court further finds that the defendant is a person who has spent his life in the streets, which has been topped off by almost three years in the State penitentiary, and there is nothing to indicate that the defendant was a relatively minor participating partner. To the contrary, he appears to be the leader and the stronger of the two persons.
"b. Although no one saw which participant pulled the trigger on the gun which killed Mr. Farmer, the bag identified as the bag which the defendant carried from the store was the bag in which the only pistol was found, and, as stated before, the defendant appeared to be the dominant actor.
"The Court finds that the defendant, Anthony O'Hara Johnson, intentionally killed William Albert Farmer while the defendant was perpetrating a robbery and that he so killed his victim for the purpose of avoiding or preventing a lawful arrest.
"The Court further finds that this capital felony was especially heinous, atrocious and cruel, and that it was similar to a robbery and shooting committed by the defendant at the Spidel Gem Company in 1974. The Court further finds that this individual killed the victim in the course of this robbery with all the indications of an execution, since the evidence showed that the wound from the back of Mr. Farmer's head was a loose contact wound, as well as due to the position of Mr. Farmer's body, his hands, and his head immediately after the killing.
"After considering all of the evidence presented on the trial of this case, as well as the evidence and arguments presented on the hearing this date, the Court finds no reason to change the verdict of the jury which fixed the punishment at death."
The findings of the court are both proper and in accordance with §§ 13-11-4, 13-11-6, and 13-11-7 of the 1975 Alabama Code. Jacobs v. State, 361 So.2d 607 (Ala.Cr.App.1977), affirmed, 361 So.2d 640 (Ala.1978).

A
The sentencing judge adduced that the defendant was "the leader and the *869 stronger of the two persons" and was the dominant actor in the offense. This finding is supported by and may be inferred from the evidence of the defendant's active and major role in the 1974 robbery and shooting, from the fact that it was the defendant who requested the neighboring store employee to turn up the music only minutes before Mr. Farmer was shot, from the fact that the pistol was found in the bag carried by the defendant, and from the fact that it was the defendant who told his accomplice not to count the money on the bus. Such a finding is not based on "total speculation" as the defendant argues.

B
Alabama Code Section 13-11-6 (1975) lists as an aggravating circumstance the fact that the capital felony "was especially heinous, atrocious or cruel". These words were defined in State v. Dixon, 283 So.2d 1, 9 (Fla.1973); Alford v. State, 307 So.2d 433, 444 (Fla.1975).
"Again, we feel that the meaning of such terms is a matter of common knowledge, so that an ordinary man would not have to guess at what was intended. It is our interpretation that heinous means extremely wicked or shockingly evil; that atrocious means outrageously wicked and vile; and, that cruel means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others. What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital feloniesthe conscienceless or pitiless crime which is unnecessarily torturous to the victim."
These definitions were adopted by this Court in Jacobs v. State, 361 So.2d 607, 633 (Ala.Cr.App.1977), affirmed, 361 So.2d 640 (Ala.1978).
While this intentional killing was not cruel or atrocious within the meaning set forth above, we do find that the planned and deliberate execution of Mr. Farmer was shockingly evil and therefore heinous. Consequently the sentencing judge acted within his discretion in finding this aggravating circumstance present.

C
As another aggravating circumstance the sentencing judge found that:
"3. This capital felony was committed for the purpose of avoiding or preventing a lawful arrest for the purposes of getting rid of the victim so that he could not identify the defendant."
Alabama Code Section 13-11-6(5) (1975) lists as an aggravating circumstance the fact that:
"(5) The capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody."
Although it has been argued, as does the defendant, that this aggravating circumstance has reference to and concerns only the protection of police officers rather than potential identification witnesses, Jacobs v. State, 361 So.2d at 638 (Judge Bookout in a specially concurring opinion), the Alabama Supreme Court has not specifically ruled on this issue. Jacobs v. State, 361 So.2d 607 (Ala.Cr.App.1977), was affirmed without reference to this issue in the majority opinion. Ex parte Jacobs, 361 So.2d 640 (Ala.1978). Chief Justice Torbert, concurring in part, dissenting in part, noted that the facts did not support a finding that the "capital felony was committed for the purpose of avoiding or preventing a lawful arrest...". "That circumstance applies only in the case where the defendant commits a capital felony to resist an actual, lawful arrest by an authorized individual." Jacobs, 361 So.2d at 648.
The aggravating circumstances contained in Alabama's Death Penalty Act are identical to those in the Florida Act. Jacobs, 361 So.2d at 633. In Washington v. State, 362 So.2d 658, 665-666 (Fla.1978), the Supreme Court of Florida found that the evidence justified the findings that the homicides were committed for the purpose of avoiding or preventing a lawful arrest (1) where one of the victims was buried in a shallow grave *870 in the defendant's backyard despite the fact that the defendant surrendered to the authorities (although only after his two accomplices were arrested at his residence and he had learned that he was also sought by the police); (2) where there was "every indication" from the evidence that the defendant attempted to kill the victim's three sisters-in-law as well as the victim[1]; and (3) where the participants, after killing a third victim, wrote matters on the walls of the house in order to leave the impression that the victim was murdered by a homosexual lover. The court found that the action described in this last circumstance "could only have been calculated to serve as a device to mislead police authorities and thereby avoid detection". Washington, 362 So.2d at 666. The majority opinion further noted that although it is true that in some instances subsection (e) (Ala.Code § 13-11-6(5) (1975)The capital felony was committed for the purpose of avoiding or preventing a lawful arrest) could apply to any robbery or murder situation where the victim was intentionally killed, the subsection would not be invariably applicable.
"Appellant additionally submits that Section 921.141(5)(e) should be taken in conjunction with the finding under subsection (d) [capital felony committed while defendant engaged in committing robbery and kidnapping] and subsection (f) [capital felony committed for pecuniary gain] of Section 921.141(5). He suggests that when the three subsections are read together it is apparent that under any kidnapping/homicide or robbery/homicide situation all these provisions would invariably be applicable. An analogy is sought to be drawn with Provence v. State, supra[2]. Although it is true that in some instances the three analytical concepts could combine automatically in the described situations we cannot say as in Provence that circumstances (e) always occurs in a robbery/murder-kidnapping/murder situation. For example, a homicide can occur in connection with a robbery or kidnapping solely because the victim attempts to resist the crime which precipitates an altercation during which the victim is killed. In recognition of this we have heretofore affirmed death sentences in cases where the subsection (e) aggravating circumstance has been found in combination with a subsection (d) aggravating circumstance involving robbery as well as kidnapping. Meeks v. State, 339 So.2d 186 (Fla.1976) (robbery); Knight v. State, supra [338 So.2d 201, Fla.1976] (kidnapping)." Washington, 362 So.2d at 666. (Footnote added)
In Washington, only one concurring Justice argued that the "avoid or prevent lawful arrest" aggravating factor is reserved "for cases such as those in which the defendant participates in a `shoot-out' with apprehending law enforcement officers, and possibly others in the same genre but not now as clearly identifiable". Washington, 362 So.2d 667-668.
In Meeks v. State, 339 So.2d 186 (Fla.1976), the defendant and his accomplice, after robbing a Jr. Food Store employee, forced the employee and a customer to lie on the floor on their stomachs. Although *871 the store employee did not die from her wounds, she was unable to say that the defendant actually fired the shots. The accomplice testified that the defendant fired all the shots into the bodies of the store employee and the customer.
In its findings of fact the trial judge stated:
The Court also finds, as an aggravating circumstance, that the capital felony was committed with the motive of avoiding and preventing arrest, was committed for pecuniary gain and to hinder the enforcement of law. Fla.Stat. 921.141(6)(e)(f)(g)."[3]

* * * * * *
"Upon consideration, it was at the time of sentencing and is now, some hours later as the sentence of death is justified in writing, the inescapable conclusion of the undersigned that sufficient aggravating circumstances exist in the facts to justify the death penalty. The murder of the victim by the defendant was for the express purpose of executing the victim to prevent his identifying the defendant, so that the defendant could flee after having committed robbery at gunpoint for pecuniary gain which robbery was witnessed by the victim and to prevent the lawful arrest of the defendant and thus this conscienceless murder was designed to hinder the enforcement of laws." Meeks, 339 So.2d at 190, 191. (Emphasis added).
In Meeks, although the Florida Supreme Court did not address the specific issue as it did in Washington, the court found that "the aggravating and mitigating circumstances surrounding the appellant's commission of this truly senseless crime convince us that the death penalty is justified". Meeks, 339 So.2d at 192.
Here the trial court found that the defendant executed Mr. Farmer "for the purpose of getting rid of the victim so that he could not identify the defendant". This was justified under Florida's construction of the particular aggravating circumstance under review. We adopt the construction of the Florida Court on its interpretation and meaning of the aggravating circumstance that "(T)he capital felony was committed for the purpose of avoiding or preventing a lawful arrest". Hence the finding of the trial court was proper.
The record before this Court displays the conscientious and diligent efforts of the sentencing judge to consider any matter relevant or probative in sentencing the defendant. The defendant was given ample opportunity to present evidence in mitigation of the heinous crime he committed. We find no error in the sentencing procedures.

VI
The constitutionality of the Alabama Death Penalty Act was upheld in Jacobs, supra.
We have searched the record for any error which might have prejudiced the defendant. We have applied the "Plain Error Rule". We are impressed with the cautious and watchful manner in which the trial judge conducted the trial and sentencing hearing. The defendant received a fair trial. The judgment of the trial court is affirmed.
AFFIRMED.
HARRIS, P. J., and TYSON and DeCARLO, JJ., concur.
BOOKOUT, J., concurs specially.
*872 BOOKOUT, Judge, concurring specially:
I concur in the result reached by the majority and likewise concur in most of what is stated in the majority opinion. However, I disagree on two points which do not affect the result reached in the instant case but which will probably affect other cases. Those two issues concern aggravating circumstances which I hope the Alabama Supreme Court will resolve.
The majority correctly states that the Alabama Supreme Court in Cook, supra, prohibits "pecuniary gain" from being used as an aggravating circumstance where the charge is robbery when the victim is intentionally killed by the defendant. As our Supreme Court said, this in effect condemns the defendant twice for the same act stealing money. In my opinion, the same rationale expressed in Cook, supra, applies to using the circumstance that the "capital felony [was committed] in the course of a robbery" to aggravate the offense of capital robbery. The two are the same thing, and thus the defendant is being condemned twice for the same actrobbery. Therefore, aggravating circumstance number two listed by the trial court is inappropriate in the instant case, in my opinion. This in effect is finding that the crime charged was committed while the defendant was engaged in the crime charged.
I likewise believe that aggravating circumstance number three listed by the trial court is inappropriate. In this regard I do not concur with the majority opinion adopting the construction of the Supreme Court of Florida on the aggravating circumstance: "The capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody."
That aggravating circumstance refers to avoiding or preventing a "lawful" arrest or "effecting an escape" from custody. In my opinion, that wording was added to the statute to protect peace officers. It is to deter "shoot-outs" with arresting officers or in escapes after arrests.
As stated in my special concurrence in Jacobs, supra, it appears that the words "lawful arrest" are significant in that a person in Alabama may resist, with force, an unlawful arrest. Green v. State, 238 Ala. 143, 189 So. 763 (1939). It should be noted that the legislature included escapes from custody along with the provision concerning lawful arrests. This reinforces my reasoning that the entire circumstance was an apparent attempt by the legislature to protect officers of the law from being murdered while attempting to make a lawful arrest or while having a prisoner in custody. If protecting potential witnesses was the intent of that section, the legislature would merely have said that killing a potential witness would be an aggravating circumstance.
It is elementary that criminal statutes are strictly construed in favor of the persons sought to be subjected to their operation. Schenher v. State, 38 Ala.App. 573, 90 So.2d 234, cert. denied, 265 Ala. 700, 90 So.2d 238 (1956). Such statutes reach no further in meaning than their wording. Fuller v. State, 257 Ala. 502, 60 So.2d 202 (1952). The wording of the aggravating circumstance in question is clear and unambiguous to me. I do not believe that the wording concerning the preventing of a lawful arrest or effecting an escape from custody should be so broadened by construction as to include indirect or collateral effects. The indirect or collateral effect of many murders would be the lessening of the probability that the murderer would be identified and subsequently arrested. However, the problem the legislature was addressing in that section was the peril faced by peace officers in making lawful arrests or preventing escapes from custody. Such a peril is both immediate and direct during the course of an arrest or custody.
The continued broadening and expanding of aggravating circumstances to cover any and every situation which arises during the course of a murder will eventually lead the United States Supreme Court to find unconstitutional applications of the new death penalty statute. The judgment of the trial court is supported by aggravating circumstance number one and number five. The other aggravating circumstances listed in *873 the trial court's order were unnecessary to support its judgment and it is likewise unnecessary for this court to go on record adopting the very broad construction of the Supreme Court of Florida on an aggravating circumstance which is not crucial to the affirmance of the trial court's judgment.
NOTES
[1] In stating its findings the trial judge noted:

"Not only was the victim in this case stabbed and shot to death, but her three elderly sisters-in-law were also shot and stabbed in an effort by the defendant to eliminate all of the witnesses to his crimes. This was clearly for the purpose of avoiding detection and thereby preventing his arrest for these crimes."
Washington, 362 So.2d at 663.
[2] Provence v. State, 337 So.2d 783 (Fla.1976), held that in applying the statute which enumerates the aggravating circumstances in capital felonies to cases of robbery-murder, the fact that the defendant had a pecuniary motive at the time of the murder constitutes only one aggravating factor, despite the fact that the statute provides in separate subsections that the commission of a capital felony in the course of a robbery is an aggravating circumstance, West's F.S.A. § 921.141(5)(d) and that the commission of a capital felony for pecuniary gain is also an aggravating circumstance. West's F.S.A. § 921.141(5)(f). This is analogous to the Alabama Supreme Court's holding in Ex parte Cook, 369 So.2d 1251 (Ala. 1978), that the aggravating circumstance that the capital felony was committed for pecuniary gain does not apply to a capital offense of robbery wherein the victim is intentionally killed.
[3] Fla.Stat. 921.141(5)(e) is identical to Ala.Code § 13-11-6(5) (1975): "The capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody."

Fla.Stat. 921.141(5)(f) is identical to Ala.Code § 13-11-6(6) (1975): "The capital felony was committed for pecuniary gain."
Fla.Stat. 921.141(5)(g) is identical to Ala.Code § 13-11-6(7) (1975): "The capital felony was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws."