TYSON, Judge.
William C. Jakes was indicted and convicted for the possession of cocaine in violation of the Alabama Uniform Controlled Substances Act, § 20-2-70, Code of Alabama 1975, and sentenced by the trial court to serve four years in the state penitentiary, which sentence was subsequently reduced to four years probation. The essence of Jakes’s contention on this appeal, also made to and rejected by the court below on his motion for a new trial, is that the evidence of the cocaine was located and seized as the direct result of the illegal arrest of Jakes, and thus should have been suppressed by the trial court.
The facts surrounding the disputed seizure of the cocaine are rather simple, and were developed during a suppression hearing outside the presence of the jury. The first and only witness for the State to testify as to the actual events was A. J. Pisano, a Phenix City police officer, who stated that he was on routine patrol with a partner, an Officer Jenkins, in the early morning hours of December 26, 1979, when, around 6:35, they received a radio dispatch to proceed to the scene of a disturbance at 210 Ninth Court in Phenix City. Upon their arrival at that address, the officers saw appellant’s wife, clothed in a “thin” nightgown or robe, standing outside of the house, but they did not at that time see the appellant. Officer Pisano testified that Mrs. Jakes, who was “very excited” and “yelling rather loudly” (R. 8), reported to them that appellant had beaten her with a clothes hanger and had then “run her out of the house,” and that she wanted the officers to remove appellant from the house so that she could go back inside. Upon being asked by the officers where appellant was, Mrs. Jakes replied that “ ‘He’s in the bedroom and he won’t let me in the bedroom’ ” *344 (R. 9), and then led the officers into the house and pointed to the closed door of the room where appellant presumably was. Officer Pisano stated that at that point Mrs. Jakes began beating on the closed door and informing appellant that the police were present, but when appellant failed to emerge she asked the officers if they could break the door down. Officer Pisano stated that he told Mrs. Jakes that he could not break the door down, but did call out to appellant in a loud voice, “ ‘Police, come out’ ” (R. 9). At this, appellant unlocked the door and Mrs. Jakes entered the bedroom, at which time the officers heard her say in a loud tone, “almost screaming,” that, “ ‘He’s got a gun. Y’all get that thing away from him. He’s got a gun; y’all take it away from him” (R. 10). Officer Pisano testified that he then yelled to appellant to put his gun down and come out of the room with his hands in front of him “where we could see him” (R. 11), which appellant then did. Officer Pisano then entered the bedroom and recovered a pistol, which was lying in view at the foot of a cot. At this point, Officer Pisano stated, he and his partner arrested appellant for “disorderly conduct” and allowed him the opportunity to get dressed, as he was at the time clothed in a t-shirt, shorts and socks. As appellant indicated which items he would wear, Officer Pisano in turn searched them before handing them to appellant to put on; during this process, Officer Pisano recovered a glass vial containing what was later determined to be cocaine from a pocket of appellant’s jacket.
Under cross-examination by counsel for appellant, Officer Pisano stated that appellant’s arrest had not been effected under a warrant, and further testified as follows:
“Q. When you made the arrest had there been a breach of the peace that occurred in your presence?
“A. The breach of the peace did not occur in my presence.
“Q. Was any breach of the peace threatened in your presence?
“A. Mrs. Jakes, standing in the bedroom with her husband having a gun in his hand, was our grounds for disorderly conduct and breach of the peace, sir.
“Q. Did you see the gun in his hand?
“A. No, sir, I did not.
“Q. You did not see the gun in his hand, then, did you?
“A. No, sir, I did not.
“Q. As far as you know, then, there was no breach of the peace threatened in your presence, was it?
“A. Yes, sir — well, no, sir, there was not.”
(R. 16-17)
Officer Pisano further testified on re-direct examination that at the time he ordered appellant to come out of the bedroom he was concerned for Mrs. Jakes’s safety, given the facts that she seemed “extremely upset” and had earlier displayed marks to Officer Jenkins which she claimed had been the result of the beating by appellant. The officer also stated the following in response to questioning:
“Q. * * * Would you consider it disturbing the peace or disorderly conduct if someone was upset and distraught, as you say Mrs. Jakes was, and her husband did in fact have a gun that she was yelling to please take away from him?
“A. Yes, sir, to me that was disorderly conduct, disturbing the peace.”
(R. 19)
Neither Officer Jenkins nor appellant’s wife testified concerning the events in question, and several other of the State’s witnesses recounted matters which we do not deem relevant to the issue on this appeal, and thus will not discuss here. Appellant did not put forth any witnesses during the suppression hearing, nor did he testify himself. At the conclusion of the hearing and after arguments by counsel for the State and appellant, the trial court ruled that appellant’s arrest had been lawful and the cocaine properly seized as incident to that arrest.
*345 i
As we have previously noted, the dispositive issue on this appeal is whether, on the above-stated facts, the admittedly warrantless arrest of appellant for “disorderly conduct” was a proper and legal one, for, if it was, then the cocaine located and seized as the direct result of that arrest was properly admissible at trial under the theory of search incident to a lawful arrest. Michigan v. DeFillippo, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); Sibron v. New York, 392 U.S. 40, 88 S.Ct. 889, 20 L.Ed.2d 917 (1968); Foy v. State, Ala.Cr.App., 387 So.2d 321 (1980); Douglas v. State, Ala.Cr. App., 366 So.2d 373 (1979). On the other hand, of course, evidence seized as the direct result of an illegal arrest must be suppressed and cannot be produced against an accused unless the primary “taint” caused by the arrest’s illegality is somehow mitigated or removed. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); Foy v. State, supra; Malone v. State, 51 Ala.App. 19, 282 So.2d 367, cert. quashed, 291 Ala. 789, 282 So.2d 371 (1973). Against this background, appellant strenuously asserts that he did not commit any offense in the presence of the officers which would have justified his arrest, while the State apparently contends that he either did so commit an offense, or that the officers had “probable cause” to believe that he had done so and thus were justified in arresting him.
Arrests by law enforcement officers are governed by statute in Alabama and at § 15-10-3, Code of Alabama 1975, the following is stated as to the circumstances which will justify an arrest without a warrant:
“An officer may arrest any person without a warrant, on any day and at any time, for:
(1) Any public offense committed or a breach of the peace threatened in his presence;
(2) When a felony has been committed, though not in his presence, by the person arrested;
(3) When a felony has been committed and he has reasonable cause to believe that the person arrested committed it;
(4) When he has reasonable cause to believe the person arrested has committed a felony, although it may after-wards appear that a felony had not in fact been committed; or
(5) On a charge made, upon reasonable cause, that the person arrested has committed a felony.”
Pursuant to the mandate of this section, it has been often held by the courts of this State that for an officer to arrest a person without a warrant for the commission of a misdemeanor (which is, by definition, a “public offense” not punishable by imprisonment in the penitentiary, see § 1-1-7, Code of Alabama 1975), the violation of a city ordinance, or a threatened “breach of the peace,” the infraction must have been committed in the presence of the officer. International Brotherhood of Electrical Workers, Local 136 v. Davis Constructors and Engineers, Inc., Ala., 334 So.2d 892 (1976); Green v. State, 238 Ala. 143, 189 So. 763 (1939); Mitchell v. State, Ala.Cr.App., 397 So.2d 169 (Ms. 1980); Cade v. State, Ala.Cr.App., 375 So.2d 802 (1978), affirmed, Ala., 375 So.2d 828 (1979); Preyer v. State, Ala.Cr.App., 369 So.2d 901 (1979); Cassell v. State, 55 Ala.App. 502, 317 So.2d 348 (1975); Jackson v. State, 55 Ala.App. 334, 315 So.2d 131, cert. denied, 294 Ala. 760, 315 So.2d 136, cert. denied, 423 U.S. 898, 96 S.Ct. 202, 46 L.Ed.2d 132 (1975); Weeks v. State, 49 Ala.App. 618, 274 So.2d 646 (1973); King v. State, 45 Ala.App. 348, 230 So.2d 538 (1970). While it does not appear from our case law that any Alabama decision has specifically construed the term “in his presence,” as contained in the first paragraph of the above-cited section, we feel that a reasonable interpretation of that phrase within the purposes of § 15-10-3 would permit an arrest where the officer was apprised through the operation of any of his senses *346 that a misdemeanor was being committed or attempted. Thus, for example, it would not be essential that an officer actually see the commission of an offense if another of his physical senses, perhaps that of smell or hearing, could afford him a fair inference that the offense was indeed being perpetrated at that point in time. In application to the facts of this particular case, it is, of course, clear that the officers would not have been justified in arresting appellant without a warrant on any misdemeanor charge related to the alleged beating of appellant’s wife before the officers’ arrival in that such an offense was not, by any definition of the term, committed in the officers’ “presence” within the ambit of the arrest statute. The closer question, however, is whether the incident involving the pistol, which concededly furnished the basis for appellant’s arrest, was an offense occurring in the officers’ presence so as to justify the arrest. Admittedly, Officer Pisano, the only person at the house that night to actually testify, stated that he never did see appellant in possession of the pistol, but only relied on Mrs. Jakes’ exclamations that appellant had a gun and the officers should take it away from him. Immediately after appellant had beén directed from the room, Officer Pisano located a pistol lying on a cot in the room, and it thus seems fairly clear that this information, when coupled with what the officers heard Mrs. Jakes say, afforded the direct supposition that appellant had indeed been in possession of the pistol, at least at some point while the officers were out in the hall. We therefore find little difficulty in the conclusion that the officers were indeed “present” for the purposes of the arrest statute if appellant’s conduct as known to the officers amounted to an offense.
The offense for which appellant was originally arrested was described by Officer Pi-sano to be “disorderly conduct” or “breach of the peace,” although the officer was unsure as to whether appellant had been charged under State law or some provision in the Phenix City Code (given, of course, the existence of such a body of laws). As we have not been cited by the State to any applicable section of the latter, we will assume for the purposes of this appeal that appellant was arrested under the terms of the State statute relating to “violent, profane, etc., language or conduct” and found at § 13-6-100, Code of Alabama 1975[1];
“Any person who disturbs the peace of others by violent, profane, indecent, offensive or boisterous conduct or language or by conduct calculated to provoke a breach of the peace shall be guilty of a misdemeanor and, upon conviction, shall be fined not more than $500.00 or be sentenced to hard labor for the county for not more than 12 months, or both, in the discretion of the court.”
This section was construed in Mitchell v. State, 41 Ala.App. 254, 130 So.2d 198, cert. denied, 272 Ala. 707, 130 So.2d 205 (1961), to limit the circumstances constituting an offense under the section to the following:
“. .. ‘disturbing the peace of others’ . . . must be caused by
(1) either by
(а) conduct which is violent, profane, indecent, offensive or boisterous; or by *347 (b) language which is violent, profane, indecent, offensive or boisterous, or by (2) conduct calculated to provoke a breach of the peace.
“Thus the act denounces disturbing the peace of others in any of three ways, i. e., two species of conduct and one of words.”
Our review of the trial record reveals that it is fairly obvious from the evidence submitted that, while the officers were standing outside the closed door to the room where appellant was, and thus presumably within hearing distance of anything appellant might have had to say, they did not hear appellant use any “violent, profane, indecent, offensive or boisterous” language or, apparently, any language at all. Indeed, the only language heard and testified to by Officer Pisano was that of Mrs. Jakes as she first stood in her front yard, then outside the closed door and finally in the room with appellant. Clearly, at the time the officers were present, appellant did not violate the terms of § 13-6-100 through any language proscribed by that section.
We are, however, confronted with appellant’s apparent possession of a pistol as conduct possibly constituting an offense within purview of the above-cited statute. It is, of course, by no means clear that, at the point that Mrs. Jakes yelled to the officers about appellant’s possession of the gun, appellant was in fact holding the pistol, although we think that this might fairly be inferred under circumstances, especially considering the fact that, immediately after appellant emerged from the bedroom, the pistol was located on a cot in that room. More importantly, there is no testimony that definitively establishes that appellant was employing the pistol in any sort of menacing or otherwise threatening manner, or that he was perhaps intending to use the pistol against his wife and the officers. From the wording of § 13-6-100 and its above-quoted interpretation in Mitchell v. State, supra, only conduct which is either “violent, profane, indecent, offensive or boisterous” or “calculated to provoke a breach of the peace” is prohibited by that section. As to the first portion of such conduct, we do not see how appellant s possession of the pistol (assuming such) was, under the circumstances, “violent, profane, indecent, offensive or boisterous” within commonly accepted definitions of those terms, in the absence of any evidence which tended to establish the existence of those types of conduct. We are also of the opinion that appellant’s actions did not amount to conduct “calculated to provoke a breach of the peace.” In Abernathy v. State, 42 Ala.App. 149, 155 So.2d 586 (1962), cert. denied, 275 Ala. 691, 155 So.2d 592 (1963), reversed on other grounds, 380 U.S. 447, 85 S.Ct. 1101, 14 L.Ed.2d 151 (1965), the term “breach of the peace” was defined to be a “ ‘violation of public order, a disturbance of the public tranquility, by any act or conduct inciting to violence or tending to provoke or excite others to break the peace,’ ” although no specific intent to do so was required (but see § 13A-11-7, Code of Alabama 1975, supra), nor was it necessary that the peace have actually been broken. It appears that the only decisions to examine this particular provision of §' 13-6-100 have been chiefly concerned with the criminal liability of leaders of various types of public demonstrations, see Abernathy v. State, supra; Johnson v. State, 50 Ala.App. 726, 282 So.2d 345, cert. denied, 291 Ala. 784, 282 So.2d 348 (1973), cert. denied, 415 U.S. 925, 94 S.Ct. 1431, 39 L.Ed.2d 482 (1974), and we further note in passing that the constitutionality of such a standard might be in some doubt when considered in the light of Ashton v. Kentucky, 384 U.S. 195, 86 S.Ct. 1407, 16 L.Ed.2d 469 (1966), see also, Committee Comment to § 13A-11-7, Code of Alabama 1975, but we find that we need not decide that here.
In applying this “breach of the peace” standard to the conduct of appellant as that conduct was established through the testimony of Officer Pisano, we are not convinced that appellant was violating § 13-6-100 on the night in question while the officer and his partner stood outside the bedroom door. As we have previously noted, there was no evidence which tended to show that appellant was employing or seeking to employ his firearm in a potentially violent *348 manner at the point at which Mrs. Jakes called to the officers. We do not see that, in the absence of such evidence, merely having a pistol either in one’s possession or in close proximity within the confines of one’s own home is “conduct calculated to provoke a breach of the peace.” We should not be construed, however, as condemning the actions of Officer Pisano and his partner in taking the precautionary steps of warning appellant to divest himself of any firearms and step out of the room into the officers’ view. But having assured themselves that appellant was unarmed, the officers were not then justified on these circumstances in subjecting appellant to a full arrest on the facts known to the officers from their vantage point outside the bedroom, for there was no apparent offense committed in their presence. Of course, Mrs. Jakes would certainly have been free to secure a proper warrant for the arrest of appellant based upon her perception of the event and the previous indignities inflicted upon her by appellant, but we are not directed to any testimony that indicates that she did so.
We hold that the warrantless arrest of appellant was not justified by the circumstances indicated, and thus the subsequent procedure by which appellant’s clothes were searched by the officers was likewise unwarranted. The incriminating evidence should have been suppressed by the trial court.
This conviction is reversed and this cause remanded.
REVERSED AND REMANDED.
All the Judges concur, except, DeCARLO, J., who dissents with opinion.

. As appellant correctly points out in his brief, § 13-6-100 was repealed by legislation implementing the new Criminal Code, Title 13A, Code of Alabama 1975, and effective January 1, 1980. § 13A-1-11, Code of Alabama 1975. “Disorderly conduct” is now proscribed by § 13A-11-7, which, by way of comparison, states:
“(a) A person commits the crime of disorderly conduct if, with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
(1) Engages in fighting or in violent tumultuous or threatening behavior; or
(2) Makes unreasonable noise; or
(3) In a public place uses abusive or obscene language or makes an obscene gesture; or
(4) Without lawful authority, disturbs any lawful assembly or meeting of persons; or
(5) Obstructs vehicular or pedestrian traffic, or a transportation facility; or
(б) Congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse.
“(b) Disorderly conduct is a Class C misdemeanor.”
As appellant’s arrest occurred on December 26, 1979, it must be governed by the former provision in § 13-6-100. See § 13A-1-7, Code of Alabama 1975.