The Circuit Court of Lauderdale County granted appellee Gregory Allen Phillips's motion to suppress evidence. The state, appellant here, maintains that the circuit court erred to reversal in so doing.
The trial court's ruling on the motion to suppress will be upheld unless it is clearly erroneous or palpably wrong.United States v. Newbern, 731 F.2d 744 (11th Cir. 1984);Simmons v. State, 368 So.2d 315 (Ala.Cr.App. 1979). The suppression hearing developed the following:
On the evening of September 1, 1985, appellee Phillips and several other people gathered at Phillip Victory's residence, an old shack in the country which was known locally as the old Barkley place, for a few beers. Victory testified that he and his cousin got into a fist fight that night, but that this was the only disturbance.
Deputy Sheriff Mike Boggan of the Lauderdale County Sheriff's Department received a dispatch to go to the old Barkley *Page 650 
place because of a report of "drunk pedestrians." Boggan arrived there, along with his reserve deputy, David House, at approximately 1:55 a.m. Boggan stated that he heard loud voices and cussing after he got out of his patrol car, but that he did not see anyone until he walked up to Victory's house. Appellee was sitting down in front of the house drinking a beer and talking. Four or five other people were standing in front of the house. Boggan testified that he thought that the loud voices and cussing were coming from the group standing in front. He stated specifically that appellee did not appear to be boisterous or loud or to be doing anything but talking and drinking beer. Boggan asked everyone in front of the house what was going on. They responded that they were just having fun and drinking a few beers. Boggan then told everyone that they were under arrest and that they were not to leave. Boggan had no arrest or search warrant. He immediately radioed for backup to help transport everyone to jail. Subsequently, Thomas McCluskey, deputy, and Joe Gans and Marty Dodd, police officers, arrived at the old Barkley place. When Dodd arrived, Boggan asked him to watch everyone outside the house, including appellee, while he went inside the house to check for more people. Dodd continued watching appellee as the others were being handcuffed and led to the patrol cars. While he was being watched, appellee stuck his hand into his pocket. Dodd told appellee to take his hand out of his pocket. Dodd testified at the hearing that he asked appellee to do so because he was afraid appellee might have a weapon. As appellee pulled his hand out of his pocket, he dropped a clear plastic bag containing a white substance onto the ground, stating: "That's not mine." Appellee and everyone else in the "round-up" were arrested for public intoxication. Appellee Phillips was later arrested and indicted for unlawful possession of cocaine, after the white substance in the bag tested positive for cocaine.
Appellee contended at the suppression hearing that the contraband was tainted by a prior illegal arrest and should be suppressed as "fruit of the poisonous tree." Wong Sun v. UnitedStates, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (963). The state contends on appeal, however, that: 1) There was no arrest prior to the discovery of the cocaine but merely an investigatory detention or stop of appellee, 2) Alternatively, that if there was an arrest prior to the discovery of the cocaine, it was a lawful arrest, and 3) If there was an illegal arrest, the evidence obtained was not tainted because it was not discovered as a result of a "search and seizure."
The first question that must be addressed is: When was the appellee arrested? The point in time of an arrest is usually a question of fact. Waldrop v. State, 462 So.2d 1021 (Ala.Cr.App. 1984),; Foy v. State, 387 So.2d 321 (Ala.Cr.App. 1980). Generally, an arrest occurs when one's freedom of movement has been curtailed such that a reasonable, ordinary person in the defendant's or suspect's position would believe he is not free to leave. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168,4 L.Ed.2d 134 (1959); United States v. Berry, 670 F.2d 583 (5th Cir. 1982). An arrest has been defined as:
 ". . . the taking, seizing or detaining the person of another either by touching, or by any act which indicates an intention to take him into custody and subject the person arrested to the actual control and will of the person making the arrest, or any deprivation of the liberty of one person by another or any detention of him, for however short a time, without his consent, and against his will, whether it was by actual violence, threats or otherwise." 6A C.J.S. Arrest§ 2 (1975).
It is apparent that a reasonable person in appellee's shoes would believe that he was under arrest before the discovery of the cocaine. Officer Boggan stated twice in appellee's presence that he and the others were under arrest. Boggan told everyone that they could not leave and then called for backup to transport them all to jail. There could have been no doubt in appellee's mind at that time that he was not free to leave, particularly after several enforcement officers arrived and began handcuffing everyone and placing them *Page 651 
into patrol cars. We therefore conclude that appellee was, in fact, arrested when he was told by Boggan that he was arrested and could not leave. Such arrest obviously took place before the officer's "discovery" of the cocaine. We reject the state's argument that appellee was not arrested at that time and was merely subjected to an investigatory stop and detention.See, United States v. Willis, 759 F.2d 1486 (11th Cir. 1985) (a stop becomes a "seizure" when under all the circumstances of the intrusion, a reasonable, ordinary person in the suspect's position would believe he is not free to leave). Appellee was detained at the very least for twenty minutes by Boggan before the other law enforcement officers arrived. Appellee was detained even longer while Boggan walked through the house and while everyone was handcuffed. This certainly amounted to more than a mere stop.
Having determined that appellee was arrested and having determined the point in time at which the arrest occurred, we find the next question to be whether the law enforcement officers had sufficient probable cause to validly arrest appellee without a warrant. Section 15-10-3, Code of Alabama 1975, states:
 "An officer may arrest any person without a warrant, on any day and at any time, for:
 "(1) Any public offense committed or a breach of the peace threatened in his presence;
 "(2) When a felony has been committed, though not in his presence, by the person arrested;
 "(3) When a felony has been committed and he has reasonable cause to believe that the person arrested committed it;
 "(4) When he has reasonable cause to believe that the person arrested has committed a felony, although it may afterwards appear that a felony had not in fact been committed; or
 "(5) On a charge made, upon reasonable cause, that the person arrested has committed a felony."
Pursuant to this section, for an officer to arrest a person without a warrant for the commission of a misdemeanor, the violation of a city ordinance or a threatened breach of the peace, the infraction must have been committed in the presence of the officer. Jakes v. State, 398 So.2d 342 (Ala.Cr.App. 1981); Cassell v. State, 55 Ala. App. 502, 317 So.2d 348 (1975). The term "in his presence" has been construed to authorize an arrest where an officer was apprised or could infer through the operation of any of his senses that a misdemeanor was being committed or attempted. Jakes, supra.
Appellee and the others were arrested for public intoxication, a misdemeanor offense. The officers never stated whether appellee had been charged under state law or some provision of the Florence City Code. As neither the state nor appellee has cited the city code, we assume for purposes of this appeal that appellee was arrested pursuant to the state public intoxication statute, § 13A-11-10, Code of Alabama 1975:
 "(a) A person commits the crime of public intoxication if he appears in a public place under the influence of alcohol, narcotics or other drug to the degree that he endangers himself or another person or property, or by boisterous and offensive conduct annoys another person in his vicinity.
"(b) Public intoxication is a violation."
Boggan testified that when he arrived at the old Barkley place he heard loud talking and cussing. Boggan further stated that he saw appellee drinking a beer but that he did not observe appellee endangering himself, or anyone else, or any property, or being boisterous or offensive in any way. No one testified as to appellee's appearance, demeanor, or state of intoxication. In fact, no one actually stated that appellee was drunk. Moreover, there is considerable doubt whether appellee could have been considered to be in a public place for purposes of this statute. Section 13A-11-1(2) defines "public place" as:
 "A place to which the public or a substantial group of persons has access, and includes but is not limited to highways, *Page 652 
transportation facilities, schools, places of amusement, parks, playgrounds and hallways, lobbies and other portions of apartment houses not constituting rooms or apartments designed for actual residence; provided, that no private dwelling and no place engaged for a private gathering is included within the meaning of public place with respect to any person specifically invited therein."
Nor did Boggan have any reason to believe that appellee possessed contraband or that any felony had been or was about to be committed. The evidence does not indicate that Phillips was violating § 13A-11-10, on the night in question. We must conclude that the officers were not justified under the above circumstances in arresting appellee for public intoxication, for there was no apparent offense committed in their presence. Accordingly, the arrest was unlawful.
Was the contraband discovered by the officers tainted by the illegal arrest so that it must be suppressed? The state contends that the contraband should not be suppressed because it was not obtained as a result of a search.
The contraband was discovered by officer Dodd as appellee pulled the contraband out of his own pocket and dropped it on the ground. In so doing, appellee was responding to Dodd's order to take his hand out of his pocket. Dodd did not tell appellee to empty his pockets.
The Constitution of the United States, as interpreted by the Supreme Court, compels a holding that evidence seized as a result of an unlawful arrest is inadmissible. Wong Sun v.United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441
(1963); Lawrence v. Henderson, 478 F.2d 705 (5th Cir. 1973);Ingram v. State, 45 Ala. App. 108, 226 So.2d 169 (1969). A defendant's abandonment of evidence can remove the hint of an illegal stop or arrest, but such abandonment must be voluntary and not merely the product of police misconduct. United Statesv. Beck, 602 F.2d 726 (5th Cir. 1979).
There is no doubt that Phillips discarded the contraband as a result of the illegal arrest. After he was arrested and before he was to be taken into a patrol car and transported to jail, appellee attempted to get rid of the cocaine.Lawrence v. Henderson, cited above, had a similar fact situation. There the accused, while being transported in a police car to jail on charges of vagrancy, took narcotics out of his pants and placed them under a seat in the police car in which he was being transported. A police officer observed the defendant's actions and later searched the car and found the narcotics. The federal court of appeals ruled that since defendant's arrest, which was determined to be illegal, prompted him to conceal the narcotics, they could not be said to have been abandoned. See also, United States v. Beck, supra
(defendant threw marijuana out a window onto ground after illegal stop — no abandonment); Swicegood v. State,448 So.2d 433 (Ala.Cr.App. 1983) (defendant's discard of sack containing pills into garbage after illegal stop by police — not abandonment). The facts of these cases are indistinguishable from the facts of this case. The circuit court correctly held that evidence of the cocaine discovered by the officers must be suppressed as the fruit of an unlawful arrest. The order of the circuit court granting appellee's motion to suppress is affirmed.
AFFIRMED.
All the Judges concur.