**J.C. BURDESHAW, Plaintiff,**

v.

**Kip SNELL, Defendant.**

**Civil Action No. 2:03cv1220–VPM.**

United States District Court,
M.D. Alabama,
Southern Division.

March 25, 2005.

---

## MEMORANDUM OPINION AND ORDER

VANZETTA PENN McPHERSON, Magistrate Judge.

This case is before the court on Kip Snell's ["Snell"] Motion for Summary Judgment (Doc. # 18), filed on 6 December 2004. Upon consideration of the parties' submissions, the court finds that the motion should be GRANTED.

## I. PROCEDURAL HISTORY AND FACTS

J.C. Burdeshaw ["Burdeshaw"] filed this lawsuit on 15 December 2003 alleging claims for false arrest and malicious prosecution under 42 U.S.C. § 1983 and Alabama common law. (Doc. # 1). The relevant facts, viewed in the light most favorable to Burdeshaw, are as follows: On 7 December 2002, Snell, while on duty as a police officer in the town of Slocomb, Alabama, stopped Burdeshaw for failing to wear his seatbelt while operating a vehicle. (Doc. # 22, p. 6; Def's Exh. 1, p. 128, ll. 8–17).[1] Snell had reason to suspect Burdeshaw was not wearing his seatbelt. (Def's Exh. 1, p. 128, ll. 8–17).[2]

The police dispatcher informed Snell that Burdeshaw's license had been suspended in Florida and that he may have warrants outstanding there as well. (Def's Exh. 2, pp. 32–36).[3] Burdeshaw claimed to have no knowledge of the suspension or the warrants or any reason therefor. (Def's Exh. 1, pp. 88–89).

David Kenneth Hogg, and Samuel Lamar Adams of Merrill, Harrison & Adams, Dothan, AL, for plaintiff.

Raymond Todd Derrick and Steadman Stapleton Shealy, Jr. of Cobb Shealy Crum & Derrick P.A., Dothan, AL, for defendant.

1. Snell submitted Burdeshaw's and his depositions as defense exhibits 1 and 2, respectively. (Doc. # 18, attach.). Burdeshaw incorporated those exhibits by reference. (Doc. # 22, p. 3 n. 1).

2. Although Burdeshaw does not specifically concede that Snell had probable cause to pull him over, he has not challenged the validity of the stop.

3. Burdeshaw did not concede that his license was suspended or that warrants had been issued. He did state that he knew of no reason his license would have been suspended (Pl's Exh. 1, pp. 88–89), but he neither explicitly challenged nor provided any evidence contradicting Snell's assertion that the dispatcher provided the information.

During the course of the stop, Snell discovered that Burdeshaw possessed a small, unlabeled glass bottle containing several pills, which are now known to have been nitroglycerine, over-the-counter cold medicine, and Prednisone, a prescription drug. (Def's Exh. 1, p. 49). Burdeshaw informed Snell that he had a prescription for the Prednisone and stated that a bottle located in his vehicle would prove this fact. (Def's Exh. 1, p. 53, ll. 5–8). Although Snell stated that Burdeshaw provided no information whatsoever regarding the pills, Snell nonetheless called an off-duty paramedic to the scene either to identify or confirm the identity of the pills. (Def's Exh. 2, p. 45, l. 4–p. 46, l. 9). After searching the vehicle (Def's Exh. 1, p. 53, ll. 9–23; p. 54, ll. 5–10; p. 102, ll. 3–11, 19–23; p. 152, ll. 1–6)[4] and after determining that Prednisone is a steroid (Def's Exh. 2, p. 46, ll. 3–5), Snell arrested Burdeshaw and charged him with unlawful possession of a controlled substance. (Def's Exh. 1, p. 103, ll. 6–8; Pl's Exh. 2, p. 46, ll. 3–5, p. 50, ll. 4–6).[5]

Shortly after arriving at the police station, Burdeshaw began experiencing chest pains. (Def's Exh. 2, p. 54, ll. 13–18).[6] Snell took Burdeshaw to the hospital and stayed with him until he was released two hours later. (Def's Exh. 2, p. 55, ll. 2–4).

They returned to the jail, where Burdeshaw remained for approximately two hours before being released. (Def's Exh. 2, p. 57, ll. 16–18; Def's Exh. 1, p. 159, ll. 14–25).

Burdeshaw retrieved his vehicle from the police impound on the following Monday. (Def's Exh. 1, p. 50, ll. 10–19). Sometime thereafter, Burdeshaw provided the Geneva County District Attorney with a labeled bottle with a label confirming his prescription for Prednisone. (Def's Exh. 1, p. 142, ll. 3–14).

On 9 January 2003, Snell testified before the Geneva County grand jury, and on the same day, the grand jury issued an indictment charging Burdeshaw with unlawful possession of a controlled substance, "To Wit: Prednezone" [sic]. (Doc. # 4, attach.; Def's Exh. 2, p. 65, ll. 16–17). On 10 January 2003, the State Department of Forensic Sciences issued a "Certificate of Analysis" identifying the pills in question as Prednisone and noting that "[n]o controlled substances" were detected. (Pl's Exh. 1).[7] Ultimately, the charges against Burdeshaw were dropped. (Doc. # 18, p. 3). Burdeshaw filed this lawsuit on 15 December 2003.

## II. STANDARD OF REVIEW

Summary judgment can be entered on a claim only if it is shown "that there is no

---

4. When this matter was before the court on Snell's motion to dismiss, the court adopted the implication, created by Burdeshaw (Doc. # 9, p. 7), that Snell had not searched his vehicle. (Doc. # 11, p. 8). The court now cites to several statements made by Burdeshaw in his deposition that conclusively establish that Snell searched Burdeshaw's vehicle.

5. It is not clear whether Snell searched the vehicle before or after placing Burdeshaw in custody, but he did conduct a search prior to taking Burdeshaw from the scene.

6. The arrest occurred on a Saturday (Def's Exh. 2, p. 28, ll. 5–7).

7. Prednisone is, in fact, a steroid. *See Medline Plus at* http://www.nlm. nih.gov/medlineplus /druginfo/uspdi /202018.html. It is not, however, an anabolic steroid and is thus not a controlled substance. *Id.; see also* State Board of Health Rule 420-7-2, appendix, *available at* http://www.adph. org/administration /controlled.pdf; *see also* Ala.Code § 20-2-20 (2004) (delegating responsibility for maintaining and updating the list of controlled substances to the State Department of Public Health).

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law". FED.R.CIV.P. 56(c). On. a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party.[8] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.1996).

Consideration of a summary judgment motion does not lessen the burden on the nonmoving party, i.e., the nonmoving party still bears the burden of coming forth with sufficient evidence on each element that must be proved.[9] *Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990); *see Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Green v. Pittsburgh Plate and Glass Co.*, 224 F.Supp.2d 1348, 1352 (N.D.Ala.2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Furthermore, "[a] judge's guide is the same standard necessary to direct a verdict: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law'." *Id.* at 259, 106 S.Ct. 2505. "Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505.

## III. DISCUSSION

As grounds for this motion, Snell argues that the undisputed facts necessitate a finding that he is entitled to immunity under both federal and state law. (Docs. ## 18, 23). Burdeshaw attempts to raise factual issues that would preclude entry of summary judgment. (Doc. # 22). The undisputed facts and the evidence before the court reveal no genuine disputes, which, when. resolved, could alter the outcome in this case.

---

**8.** The Supreme Court explained that:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to· make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citations omitted).

**9.** "[I]f on any part of the prima facie case there would be insufficient evidence to require submission of the case to a jury, . . . [the

court must] grant summary judgment [for the defendant]." *Earley*, 907 F.2d at 1080 (citations omitted). In *Earley*, the Court of Appeals further emphasized:

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

\* \* \*

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted) (emphasis added); *accord Hudson v. Southern Ductile Casting Corp.*, 849 F.2d 1372, 1376 (11th Cir.1988).

*Earley*, 907· F.2d at 1080–81.

### A Burdeshaw's Federal Claims

Burdeshaw contends that Snell, under color of State law, deprived him of his freedom, thereby violating his constitutional rights, when he arrested and pursued a conviction against Burdeshaw without probable cause. (Doc. # 1); *see also* 42 U.S.C. § 1983 (2004). Snell argues that he is entitled to qualified immunity under section 1983 and state law discretionary act immunity pursuant to § 6–5–338 of the Alabama statutes (Docs. ## 14, 18, 23). The court agrees with Snell.

### 1. The Standard for Qualified Immunity Under Section 1983

■■■ "Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Lee v. Ferraro*, 284 F.3d 1188, 1193–94 (11th Cir.2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Thomas v. Roberts*, 261 F.3d 1160, 1170 (11th Cir. 2001)). A police officer acting within the "scope of his discretionary authority when the allegedly wrongful acts occurred" is entitled to qualified immunity unless "the plaintiff [can] show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194 (quoting *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir.1991)); *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir.1988). An on-duty police officer making an arrest is performing a discretionary function. *Crosby v. Monroe County*, 394 F.3d 1328 (11th Cir.2004) (describing discretionary function as one that falls within the offi-

cer's job responsibilities). Burdeshaw does not dispute the fact that Snell was performing a discretionary function, therefore the burden is on Burdeshaw to demonstrate that Snell is not entitled to qualified immunity. *Lee*, 284 F.3d at 1194.

Viewing the facts before the court in the light most favorable to Burdeshaw as true, the court must determine first whether Snell violated Burdeshaw's constitutional rights and, second, whether the constitutional rights violated were clearly established. *Lee*, 284 F.3d at 1194 (citing *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001)). If the first inquiry leads the court to conclude that Snell did not violate Burdeshaw's constitutional rights, "there is no necessity for further inquiries concerning qualified immunity." *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir.2003) (quoting *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151). The court concludes that Snell did not violate Burdeshaw's constitutional rights.

### 2. Burdeshaw's Claim for False Arrest

Inexplicably, the parties focused their arguments exclusively on whether Snell had probable cause to arrest Burdeshaw on the controlled substances charge. (Docs. ## 18, 22). Burdeshaw focused much of his argument on the fact that Prednisone was ultimately determined not to have been a controlled substance. He argued that, in any event, the arrest violated his Fourth Amendment rights because a prescription bottle in his truck at the time of his arrest would have exonerated him. (Doc. # 22, pp. 11–13).[10] Snell did

---

**10.** Burdeshaw offers no real legal argument to support his position. (Doc. # 22). He cites only to *Stewart v. Baldwin County Board of Education* for the proposition that "[t]he qualified immunity defense provides ample protection to all except the plainly incompetent or those who knowingly violate the law."

908 F.2d 1499, 1503 (11th Cir.1990). Although the citation is accurate, *Stewart* is a civil case involving no criminal charge and providing no insight into the probable cause inquiry or any other aspect of this case. *See generally, id.*

not address Prednisone's status as a controlled substance and, instead, focused on evidence supporting his claim that he searched the vehicle for the prescription bottle that was allegedly in the truck (Doc. # 18). Even if he had found the bottle, Snell argued further, it would not have exonerated Burdeshaw. (Doc. # 23).

Although the issues raised in the context of the controlled substance charge present interesting and complex questions, this court need not answer them, as Snell had probable cause to arrest Burdeshaw for at least one other offense. The Fourth Amendment requires nothing more. *Devenpeck v. Alford*, —— U.S. ——, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004).

 . The court must look to state law to determine whether Burdeshaw's arrest was lawful. *See, e.g., U.S. v. Rice*, 652 F.2d 521, 525 (5th Cir. Aug.4, 1981) ("[T]he lawfulness of an arrest by state officers is determined by the law of the state where the arrest took place ... subject to federal constitutional standards.").[11] In Alabama, a police officer may conduct a warrantless arrest for a misdemeanor committed in his presence. *See* ALA.CODE § 15–10–3 (2004) (using the term "public offense," which has been applied to include misdemeanors. *State v. Phillips*, 517 So.2d 648 (Ala.Cr. App.1987); *see also Peoples v. Campbell*, 377 F.3d 1208, 1220 n. 25 (11th Cir.2004)). "The term 'in his presence' has been construed to authorize an arrest where an officer was apprised or could infer through the operation of any of his senses that a misdemeanor was being committed or attempted." *Phillips*, 517 So.2d at 651. Of

course, the arrest must be supported by probable cause. **U.S. CONST. AMEND. IV;** *see, e.g., Maryland v. Pringle*, 540 U.S. 366, 370, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003); *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir.2004).[12]

Probable cause is nothing more than a "reasonable ground for belief of guilt." *Pringle*, 540 U.S. at 371, 124 S.Ct. 795. It "must be judged not with clinical detachment but with a common sense view to the realities of normal life." *Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir.1990) (quoting *Wilson v. Attaway*, 757 F.2d 1227, 1235 (11th Cir.1985)). "To determine whether an officer had probable cause to arrest an individual, [the court must] examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Pringle*, 540 U.S. at 371, 124 S.Ct. 795 (quoting *Ornelas v. United States*, 517 U.S. 690, 695, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). Contrary to the implication of Burdeshaw's position in this case, an officer's subjective belief is irrelevant. *Devenpeck*, 125 S.Ct. at 593–94.

In an eight-member unanimous Supreme Court decision (Justice Rehnquist took no part), Justice Scalia wrote:

> Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. *See Whren v. United States*, 517 U.S. 806, 812–13, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (reviewing cases); *Arkansas v. Sullivan*,

---

11. In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

12. This opinion recognizes the lesser standard of arguable probable cause for the purpose of qualified immunity for section 1983 claims. *See, e.g., Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir.2002). Having determined that Snell had probable cause to arrest Burdeshaw, however, it is not necessary to discuss arguable probable cause.

532 U.S. 769, 121 S.Ct. 1876, 149 L.Ed.2d 994 (2001) (*per curiam*). That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause. As we have repeatedly explained, " 'the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify the action.' " *Whren, supra,* at 813, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (quoting *Scott v. United States,* 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978)). "[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent." *Whren, supra,* at 814, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89. "Evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer." *Horton v. California,* 496 U.S. 128, 138, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

*Id.* at 593–94.

The *Devenpeck* Court then addressed and disposed of a rule espoused by several circuits that required the facts and circumstances giving rise to probable cause to be at least closely related to the charge stated by the police officer. *Id.* Neither Alabama nor the Eleventh Circuit ever adopted this rule. *See United States v. Saunders,* 476 F.2d 5 (5th Cir.1973) ("When an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest.") *quoted in Hill v. State,* 665 So.2d 1024 (Ala.Cr.App.1995) ("If [the officer's] observation of [the arrestee's] conduct was sufficient to supply [the officer] probable cause to arrest [the arrestee] for any chargeable offense, then the probable cause element is qualified") *and Powell v. State,* 548 So.2d 590, 600 (Ala.Cr.App.1988) (holding that an officer had probable cause to arrest the plaintiff even though he did not have probable cause to arrest him for the charge stated at the time of the arrest).

Nevertheless, the reasons the Supreme Court gave for dismissing this rule should aid the parties in understanding the ruling in this case:

Such a rule makes the lawfulness of the arrest turn upon the motivation of the arresting officer—eliminating, as validating probable cause, facts that played no part in the officer's expressed subjective reason for making the arrest, and offenses that are not "closely related" to that subjective reason. *See, e.g., Sheehy v. Plymouth,* 191 F.3d 15, 20 (1st Cir. 1999); *Trejo v. Perez,* 693 F.2d 482, 485–86 (5th Cir.1982). This means that the constitutionality of an arrest under a given set of known facts will "vary from place to place and from time to time," *Whren, supra,* at 815, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89, depending on whether the arresting officer states the reason for the detention and, if so, whether he correctly identifies the general class of offense for which probable cause exists. An arrest made by a knowledgeable, veteran officer would be valid, whereas an arrest made by a rookie *in precisely the same circumstances* would not. We see no reason to ascribe to the Fourth Amendment such arbitrarily variable protection.

\*　　\*　　\*　　\*　　\*　　\*

Those are lawfully arrested whom the facts known to the arresting officers give probable cause to arrest.

*Id.* at 593–94. Therefore, as long as the facts known to Snell gave Snell probable cause to arrest Burdeshaw for some crime, whether Snell had probable cause to arrest him for the particular crime stated at the time of the arrest is of no legal consequence in this case.

■ Setting aside the circumstances regarding the charge for possession of a controlled substance, the facts compel the court to conclude that Snell had probable cause to arrest Burdeshaw for unlawful possession of a prescription drug.[13]

"Any person found in possession of a drug or medicine limited by law to dispensation by a prescription, unless such drug or medicine was lawfully dispensed, shall be guilty of a misdemeanor." ALA.CODE § 34–23–7 (2004). Burdeshaw does not dispute the fact that he possessed Prednisone, that Prednisone is a prescription drug and that he is only able to obtain one prescription at a time. (Pl's Exh. 1, p. 117, ll. 15–24; p. 146, ll. 2–15). Burdeshaw also admitted that the prescription bottle in his truck—the one that would have exonerated him—was not the one issued for his current prescription.[14] (Pl's Exh. 1, p 146, l. 16–p. 149, l. 22). Thus, the bottle would merely have shown that Burdeshaw at one time had a prescription for Prednisone.

Burdeshaw has failed to provide any evidence that undermines Snell's claim that he had probable cause to arrest Burdeshaw. While Snell's decision to arrest Burdeshaw may seem harsh, the question is not whether Snell *should* have arrested Burdeshaw but whether he *could* have arrested him.

The court finds that Burdeshaw has failed to raise a triable question on this issue. No reasonable juror viewing the evidence before the court could conclude that the circumstances did not give rise to a reasonable belief that Burdeshaw had committed a chargeable offense. Therefore, the arrest did not violate Burdeshaw's constitutional rights, and Snell is entitled to qualified immunity with respect to Burdeshaw's false arrest claim under section 1983. Summary judgment is due to be granted.

### 3. Burdeshaw's Claim for Malicious Prosecution

■ To succeed on a claim for malicious prosecution under section 1983, a plaintiff

---

**13.** Although Snell also had probable cause to believe Burdeshaw was driving with a suspended license, an arrest for such an offense would not have been proper without giving Burdeshaw the opportunity to sign a summons to appear in court. ALA.CODE § 32–1–4 (2004). The facts offer no indication whether Snell afforded Burdeshaw such an opportunity. Snell was required to impound Burdeshaw's vehicle under the circumstances, however. § 32–6–19(b) (2004).

**14.** Not only does Burdeshaw state this in his deposition, but he also attached (as Plaintiff's Exhibits 4 and 5 to Snell's deposition) photocopies of what appears to be the Prednisone bottle in question, although they may well be two different bottles. The portions of the label or labels on the copies indicate a subscription or subscriptions for thirty Prednisone, one pill to be taken every day. Two dates are reflected: sometime in the first week of September 2002 (Def's Exh. 4), the other for the first week of October 2002 (Def's Exh. 5). Accepting the latter date, taking the medicine as prescribed, Burdeshaw would have finished this bottle the first week of November 2002. Snell did not arrest Burdeshaw until 7 December 2002. Burdeshaw claims that he generally took anywhere from one to five pills a day. (Pl's Exh. 1, p. 107, ll. 6–24).

Burdeshaw has failed altogether to provide any evidence, beyond his own statements, that he had an active Prednisone prescription when he was pulled over. For the purpose of this motion, the court accepts as true Burdeshaw's assertions that he did, in fact, have a Prednisone prescription. Nothing, however, required Snell to make the same assumption. Burdeshaw makes no claims with respect to the length of his detention.

must prove a deprivation of his Fourth Amendment right to be free from unreasonable searches and seizures in addition to the common law elements of the tort of malicious prosecution. *Kingsland*, 382 F.3d at 1234. Burdeshaw premises his claim for malicious prosecution to his arrest (*see* Doc. # 1), even though the Eleventh Circuit has held that the original arrest cannot form the basis for a federal malicious prosecution claim. *Id.* (holding that the deprivation of rights must "arise from", i.e. result from, a judicial proceeding such as an arraignment or indictment).

■ Notwithstanding the fact that the summary judgment standard gives plaintiffs the benefit of the doubt, Burdeshaw must still provide evidence supporting his claims. Yet, he has offered no evidence connecting the judicial proceedings in this case—namely, the grand jury proceedings that resulted in an indictment—to any deprivation of his Fourth Amendment rights. In addition, even if the court disregards *Kingsland* and looks to the original arrest, Snell is entitled to qualified immunity for arresting Burdeshaw because the arrest did not violate Burdeshaw's Fourth Amendment rights. Absent such a violation, Burdeshaw has no claim for malicious prosecution.

## B. Burdeshaw's State Claims

Burdeshaw has also asserted state law claims for false arrest and malicious prosecution. The court need not address Burdeshaw's claim for false arrest because of its finding, *supra*, that the arrest was supported by probable cause, in reliance on Alabama law. Thus, Snell is entitled to summary judgment on this claim, and the only remaining claim for resolution is the state law claim for malicious prosecution.

■ On this claim, however, Burdeshaw has utterly failed to provide any argument supporting his opposition to Snell's motion. He has discussed the facts of the case, but

he did not explain how these facts support his claims. Snell argues that he is immune from suit under Alabama law because Burdeshaw has failed to produce any evidence of malice, and Snell had probable cause for charging Burdeshaw with the crime of unlawful possession of a controlled substance.

Under Alabama law, Snell is entitled to immunity for discretionary acts undertaken in the "line and scope of his ... law enforcement duties." ALA.CODE § 6–5–338 (2004). If the court determines that Snell's acts were discretionary, then Burdeshaw has the burden of producing evidence that Snell's actions were "so egregious as to amount to willful or malicious conduct or conduct engaged in bad faith." *Couch v. City of Sheffield*, 708 So.2d 144, 153 (Ala.1998); *see also Sheth v. Webster*, 145 F.3d 1231, 1239 (11th Cir.1998). "Acts of such nature are not considered by Alabama law to be discretionary." *Sheth*, 145 F.3d at 1239 (quoting *Wright v. Wynn*, 682 So.2d 1, 2 (Ala.1996)).

Discretionary acts are "those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances." *Wright*, 682 So.2d at 2. The act at issue is not Burdeshaw's arrest, which this court has already validated; rather, it is Snell's decision to charge Burdeshaw with possession of a controlled substance. The charge was clearly a discretionary act.

Burdeshaw relies strictly upon the facts of his case without citing legal precedent. He describes the facts upon which he relies as follows: (1) Snell knew Burdeshaw (Doc. # 22, p. 3); (2) Burdeshaw was neither "convicted" of driving with a suspended license nor arrested on any outstanding warrants and actually provided evidence that his license was not suspended (*Id.*);

(3) "While at the hospital [with Burdeshaw] Snell made no attempt to talk to Burdeshaw's doctors or nurses" (Doc. # 22, p. 5); (4) Snell testified before the grand jury, which later issued an indictment on the controlled substances charge (*Id.*); (5) "The prescription bottle from which the Prednisone pills came was in [Burdeshaw's] truck" and Burdeshaw had informed Snell of this fact; (6) Burdeshaw believed that Snell was outside of his jurisdiction when Snell stopped him (Doc. # 22, p. 10); and (7) Prednisone is not a controlled substance (Doc. # 22, p. 11).

With the exception of the claim that the bottle in Burdeshaw's truck was the bottle from which the Prednisone came, the court accepts as true the facts as stated above.[15] Because the court should not view these facts in a vacuum, each assertion is addressed in light of the record before the court.

Assuming for the sake of argument that Snell's acquaintance with Burdeshaw, without more, might support an inference of malice, the court finds that it could not in this case. Burdeshaw stated in his deposition that he knew Snell only by having "seen him at a distance a few times." (Def's Exh. 1, p. 126, ll. 1–4). Snell recalled having spoken with Burdeshaw on occasion, but stated that he knew Burdeshaw only "in passing" as a friend of Snell's ex-stepfather. (Def's Exh. 2, p. 18, ll. 15–22; p. 20, ll. 5–8). Furthermore, Burdeshaw testified that none of the interaction between them would have generated ill will (Def's Exh. 1, p. 126, ll. 5–8).

Burdeshaw's reference to allegations of a suspended license and possible outstanding warrants are meaningless absent some evidence that Snell contrived these allegations. Snell contends that the dispatcher informed him of these facts, and Burdeshaw has provided no contradictory evidence. Although Snell could not remember the name of the dispatcher, Burdeshaw certainly could have determined the name through discovery. Nothing before the court suggests that Burdeshaw made any such effort.

Instead, Burdeshaw relies on the fact that at some point after the arrest, he went to Mariana, Florida, and retrieved a report showing that his license was not suspended (Pl's Exh. 1, p. 88, l. 1–p. 89, l. 20). Burdeshaw never stated unequivocally that his license was not suspended at the time Snell arrested him (*Id.*). In addition, Burdeshaw does not dispute Snell's contention that he reasonably believed Burdeshaw's license was suspended. (*Id.* at p. 89, ll. 3–7). Snell testified that he confirmed the dispatch information and that Burdeshaw's license was in fact suspended in relation to a previous accident. (Pl's Exh. 2, pp. 31–36).

Snell cited Burdeshaw for driving with a suspended license, but, according to Snell, the former police chief told Burdeshaw that he would dismiss the citation when Burdeshaw produced a statement from Florida showing that his license was current. (*Id.*) The chief's dismissal of the citation is certainly a goodwill gesture, but it provides no evidence from which the court can conclude that Burdeshaw's license was not suspended at the time Snell cited him. Indeed, Burdeshaw did not even provide the court with a copy of the report that he provided to the police chief. Burdeshaw simply claimed to be unaware of circumstances that would have resulted in a suspended license. (Pl's Exh. 1, pp. 88, l. 1–p. 89, l. 20). That is simply not enough to create or bolster an inference of malice.

---

**15.** Other than his conclusory allegation, Burdeshaw provided no evidence to support that allegation.

Snell's failure to talk to Burdeshaw's doctors while he was undergoing treatment for chest pains is not significant. There is no evidence that any of the medical providers at the hospital had information about his current prescriptions. It is Burdeshaw's responsibility to demonstrate how this fact could create an inference of malice. He has failed to do so.

Burdeshaw also relies upon the fact that Snell testified before the grand jury, which then indicted him for possession of a controlled substance. In his opposition to Snell's motion to dismiss, Burdeshaw stated that "the only way the grand jury could have returned an indictment is if Snell willfully withheld testimony that Burdeshaw had prescriptions for the Prednisone or that he had a reason to believe Burdeshaw had a prescription bottle in the truck but failed to investigate further." (Doc. # 9, pp. 9–10).

Burdeshaw further states that "as [Snell] was the only witness listed on the indictment there is a clear inference he testified that Prednisone is a controlled substance." (Doc. # 22, p. 11). It is enough for the court to remind the parties that proceedings before a grand jury are confidential. Neither the parties nor this court should speculate about the particulars of testimony or other evidence before a grand jury. Aside from Burdeshaw's bare assertions, Snell had no reason to believe that Burdeshaw had a current prescription for Prednisone, and it is now clear that the bottle in Burdeshaw's truck would not have changed that.[16]

It is also worth noting that Snell was not charged with explaining the law to the grand jury. ALA.CODE § 12–16–202 (2004) (stating that judges are responsible for charging the grand jury). Whether Prednisone is, contains, or can be used to produce, a controlled substance or a salt or isomer of a controlled substance is a question of science and law, and Snell is neither licensed to or charged with interpreting the law beyond what is necessary to determine whether one has been broken. The indictment charges Burdeshaw with illegally possessing a controlled substance, "To Wit: Prednizone" [sic]. (Doc. # 4, attach.). Therefore, the grand jury was correctly informed as to the substance in Burdeshaw's possession. The existence of other information before the grand jury is a subject that neither this court nor the parties are empowered to explore further. ALA.CODE § 12–16–215 (2004) (prohibiting grand jurors, grand jury witnesses, reporters and stenographers from revealing, *inter alia*, the information on which a grand jury relied to carry out its duties).

Burdeshaw's belief that Snell pursued him outside of Snell's jurisdiction is not a basis for finding malice without some evidence that Snell was actually outside his jurisdiction. Burdeshaw again fails to provide any such evidence, and Snell testified unequivocally—and without dispute—that he was within his jurisdiction. (Def's Exh. 2, p. 28, ll. 19–20).

Finally, the court agrees with Burdeshaw that Prednisone is not a controlled substance. Thus, Burdeshaw apparently concludes, Snell had no probable cause to charge him with unlawful possession of a controlled substance. Notwithstanding the court's prior discussion of these issues, the pertinent inquiry in the context of evaluating a state law claim of malicious

---

**16.** This also suffices to address Burdeshaw's reliance on the fact that the truck contained a bottle for the Prednisone. Furthermore, it is undisputed that Snell conducted a search of the vehicle and Burdeshaw believed Snell had looked at all of the bottles in his truck. *See* *supra* note 4 and accompanying text. In fact, in his opposition to the motion, Burdeshaw states that "his prednisone prescription bottle was in the door of his truck and that he saw Snell pick up the bottles and look at them." (Doc. 22, p. 12).

prosecution is not whether probable cause existed but whether Snell, in charging Burdeshaw with the crime, acted with malice or an equivalent motivation. *Sheth,* 145 F.3d at 1239.

Once again, Burdeshaw offers no evidence that Snell's decision to charge him with possession of a controlled substance was anything but a good faith mistake. In fact, Burdeshaw's own testimony is that Snell had no motive to charge him falsely and that he exhibited no behavior that led Burdeshaw to conclude that Snell was acting in bad faith or knew he was doing something wrong. (Def's Exh. 1, p. 126, l. 1–p. 127, l. 22; p. 139, l. 25–p. 141, l. 14).

The evidence establishes that Snell's mistake was reasonable. Thus, it cannot form the basis of a finding of malice sufficient to defeat Snell's claim of entitlement to discretionary act immunity. Burdeshaw's conclusory assertions are not enough to carry his burden. *See, e.g., Roberts v. City of Geneva,* 114 F.Supp.2d 1199, 1216–17 (M.D.Ala.2000).

## IV. CONCLUSION

For the reasons stated herein, it is

ORDERED that Snell's Motion for Summary Judgment is GRANTED and that all of Burdeshaw's claims are DISMISSED with prejudice. An appropriate judgment will be entered.